[Crim. No. 25166. Second Dist., Div. Five. Apr. 22, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES PATRICK GUZMAN, Defendant and Appellant.

**COUNSEL**

Barry Tarlow and Robert C. Moest for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Jack T. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHYTE, J.*—**Defendant appeals from a judgment of conviction of first degree murder, a violation of Penal Code section 187, and a finding that he used a firearm at the time of the commission of the offense.

On February 3, 1973, at approximately 5:45 p.m., Benjamin Kerman, the owner of Carson Jewelers in the City of Carson was shot and killed in the course of a robbery or attempted robbery of the store. Appellant and one Robert Donner were jointly accused of the commission of the offense. According to the policy theory Donner acted as decoy and lookout during the commission of the robbery. On the day in question a man, subsequently identified by Joie Hyde, a clerk in the store, to have been the defendant, entered the store and approached the watch counter. He asked for the watchmaker and was told he was in but was in the back. While this man was waiting, Donner, wearing a cast and carrying a crutch, entered and asked to see wedding and engagement rings. Moments later Kerman entered the room and Mrs. Hyde told him the man at the watch counter was waiting for him. She then turned her attention to Donner.

About four minutes later a shot was heard and Mrs. Hyde, leaving her customer, started toward the back of the store where Kerman and the man she later identified as defendant had gone. As she passed the cash register the first man who had entered the store rushed from the rear of the store with a gun in his hand. As he passed within a foot of Mrs. Hyde he pointed the gun at her and ordered her to go to the back of the store and stay there. On entering the rear room she saw Mr. Kerman lying in a pool of blood. Other evidence will be referred to in the discussion of the points raised on appeal.

At the trial Mrs. Hyde identified defendant as the man with the gun. She stated his appearance was changed, particularly as to a moustache and the way he was wearing his hair, but that he was the man. She was extensively cross-examined concerning previous identifications and doubts and prior descriptions given the officers. She conceded defendant did not particularly resemble a composite drawing made by a police artist from her descriptions given near the time of the crime.

Defendant attempted to present expert testimony of Dr. Robert Shomer, a psychologist, concerning the factors involved in identification

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

such as those involved in "perception," "memory," the social context in which the individual tries to recollect something once perceived, and the psychological state of the perceiving organism, e.g., observation under stress. An elaborate written offer of proof, which was in the nature of a psycho-legal brief, consisting of some 20 pages was filed with and considered by the trial court. After fully considering this offer and the arguments of counsel the trial judge sustained the People's objection to this testimony. In doing so the judge stated:

"This type of testimony doesn't come under any rule of evidence that I know of. It is something, I suppose, that could possibly be used to inform the jury about a theory that the psychiatrists have propounded and have become very popular in doing so and hope to become a part of the court system in informing juries of how they should determine facts in a case, but I think the real question here is a question for the jury to decide. It is not a matter that the jury needs expert testimony regarding. It is something that everyone knows about, the problems of identification. The jurors here were well questioned regarding their experience with identification, with having mistakenly identified people. Everyone knows those things happen."

This action by the trial judge is appellant's first claim of error. The question of the admissibility of such evidence has very recently been before the appellate courts in *People* v. *Johnson* (1974) 38 Cal.App.3d 1 [112 Cal.Rptr. 834] (hg. by the Supreme Ct. den. May 22, 1974). There, as here, there was a question of a witness' prior doubtful identification. In fact in that case there had been prior identification of an entirely different person as the one who fired the gun. In *Johnson* the court stated "In rejecting defendants' offer of the psychologist's expert testimony, the trial court declared in effect that the testimony would take over the jury's task of determining the weight and credibility of the witness' testimony. This ruling was well within the [trial court's] discretion."

The extent of the trial court's broad discretion in matters of this kind is fully discussed in *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 171 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]. How far should the courts go in allowing so-called scientific testimony, such as that of polygraph operators, hypnotists, "truth drug" administrants, as well as purveyors of general psychological theories, to substitute for the common sense of the jury? Surely the answer is "not in all cases, or even in the ordinary or usual cases." The good judgment of the trial judge as to whether the particular case contains such unusual factors as to make the

"expert testimony" a help to jury determination or whether the case is one where the effect of such testimony threatens to take over the jury's function must control in the absence of a clear abuse of discretion. We find no such abuse here.

■ Appellant's second claim of error is somewhat akin to but entirely separate from his first. This claim is that the trial court should have given specific instructions on the factors that affect eyewitness identification testimony, as they relate to reasonable doubt. Defendant proposed four instructions covering the People's burden of proving identity beyond a reasonable doubt and covering factors which should be considered in determining whether such burden has been met.[1] While the trial court could well consider instructions 1 and 2, which go together, too long and argumentative, instruction 1 at least presents the basic problem and could have been modified to eliminate the faults contained. Instructions 3 and 4 are basically correct and if anything require the changing of only a word or two. The time is past when a trial judge may refuse an otherwise proper instruction because of the use of an improper word.

[1] "*Instruction No. 1*

"One of the most important issues in this case is the identification of the defendants as the perpetrators of the crime. The state has the burden of proving identity beyong [*sic*] a reasonable doubt. Therefore, you, the jury, must be satisfied beyong [*sic*] a reasonable doubt of the accuracy of the identification of a defendant before you can convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"Identification testimony is an expression or belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later:

"In appraising the identification testimony of a witness, you should consider the following:

"1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how good were lighting conditions, whether the witness had occasion to see or know the person in the past.

"2. Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength if [*sic*] the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification you should scruntinize [*sic*] the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant as a factor bearing on the reliability of the identification.

"You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

"3. You may take into account any occasions in which the witness failed to made [*sic*]

Notwithstanding the broad language of Penal Code section 1096, a defendant is entitled to an instruction directing the jury's attention to evidence from the consideration of which reasonable doubt of defendant's guilt might be engendered. (*People* v. *Kane* (1946) 27 Cal.2d 693 [166 P.2d 285]; *People* v. *Wilson* (1929) 100 Cal.App. 428, 432 [280 P. 137].) Under this rule defendant is entitled to an instruction relating identification to reasonable doubt. (*People* v. *Roberts* (1967) 256 Cal.App.2d 488 [64 Cal.Rptr. 70]; *Gregory* v. *United States* (1966) 369 F.2d 185 [125 App.D.C. 140]; *Macklin* v. *United States* (1969) 409 F.2d 174 [133 App.D.C. 139]; *United States* v. *Telfaire* (1972) 469 F.2d 552 [152 App.D.C. 146].)

---

such an identification of defendant or make [*sic*] an identification that was inconsistent with his identification at trial.

"4. Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification you must find the defendant not guilty.

"*Instruction No. 2*

"In addition to the factors which were previously pointed out for your consideration as to the accuracy of an identification you should consider whether or not the witness is the same race as the individual he is attempting to identify. If they are not, you should consider the effect this would have on an accurate identification.

"*Instruction No. 3*

"In evaluating the identification testimony of a witness, you should determine if:

"1. The witness had an adequate opportunity to make the observation;

"2. If the witness is positive in his identification;

"3. If the witness' identification testimony is not weakened by a prior failure to identify or by prior inconsistent identification, and

"4. If after cross-examination the testimony remains positive and unqualified.

"If you find that any one of these four conditions is absent, you are admonished to consider the witness' testimony as to identify with caution and scruntinize [*sic*] it with care.

"*Instruction No. 4*

"You are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is on the state to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant.

"In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense."

That it was error to refuse defendant's request for an instruction on the question of identification and reasonable doubt is established by *People* v. *Roberts, supra.* If said error stood alone we would hold it nonprejudicial in the light of the giving of general instructions on the credibility of witnesses (CALJIC No. 2.20) which cover many of the matters which might affect the validity of a witness' identification testimony, and the last paragraph of CALJIC No. 4.50 on alibi, which expressly requires proof beyond a reasonable doubt as to defendant's presence at the scene of the crime (basically the same issue as is involved in identification). (*People* v. *Gomez* (1972) 24 Cal.App.3d 486 [100 Cal.Rptr. 896].) However, when coupled with other errors hereinafter set forth we feel the error may have contributed to defendant's prejudice.

There is more danger of prejudice in cases such as this where a cautionary instruction on circumstantial evidence was given. In such a case the absence of a cautionary instruction on the possible weaknesses of direct evidence of identity may lead the jury to feel such direct evidence is considered more substantial.

■ We next refer briefly to appellant's contention that the court erred in instructing the jury that an inference of guilt could be drawn from the evidence of flight.[2] The instruction given was CALJIC No. 2.52. The propriety of this instruction has long been recognized. (*People* v. *Johnson* (1969) 271 Cal.App.2d 616 [76 Cal.Rptr. 768]; *People* v. *Mulqueen* (1970) 9 Cal.App.3d 532, 543 [88 Cal.Rptr. 235].) Appellant recognizes this but asks us to reevaluate this instruction in the light of judicial skepticism as to the probative value of the evidence of flight expressed in some federal court opinions including *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]. This same request for a reevaluation of this instruction was made to our California Supreme Court in 1972 and *Wong Sun* was urged as a basis for the request. The Supreme Court refused to do so and upheld the instruction. (*People* v. *Cannady* (1972) 8 Cal.3d 379 [105 Cal.Rptr. 129, 503 P.2d 585].) There is no reason to depart from *People* v. *Cannady, supra.* We would comment, however, that the instruction approved in *People* v. *Hill* (1967) 67 Cal.2d 105, 120, fn. 9 [60 Cal.Rptr. 234, 429 P.2d 586], may be preferable to the standard instruction in cases where defendant offers evidence of other possible explanations for his flight.

---

[2]Appellant left Los Angeles County after the offense and moved to Oakland.

We now turn to two specifications of error which we believe are well taken. ■ Evidence of appellant's earlier arrest while under the influence of narcotics should have been excluded.

On direct examination defendant, without any objection by the People, introduced the fact that he had received a workman's compensation check for $2,272.50 on January 19, 1973. On the theory that this evidence was introduced to show lack of motive for a robbery on February 3, 1973, and to counteract that evidence by showing a possible motive, the prosecution was allowed to introduce testimony by Officer John R. Spindler that he observed defendant on December 22, 1972, at the Torrance police station, observed marks on his arm and concluded he was under the influence of a narcotic. In an effort to prevent the introduction of this inflammatory evidence defendant offered to have the testimony concerning the check stricken and the jury instructed to disregard it. He further offered to stipulate that the money received from the check might have all been used before the date of the crime for other expenses he might have had. Both proposals were rejected by the prosecutor and the trial judge.

The Supreme Court has recently had occasion to again point out the extremely prejudicial nature of evidence of prior crimes and the necessity for examining the admissibility of such evidence with extreme care. (*People* v. *Kelley* (1967) 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91].) ■ Evidence of prior crimes should be admitted only when there is a real issue to which such evidence is directed. (*People* v. *Gregg* (1968) 266 Cal.App.2d 389 [71 Cal.Rptr. 920]; *People* v. *Perez* (1974) 42 Cal.App.3d 760, 763-766 [117 Cal.Rptr. 195].) Every effort should be made to meet the issue in another way or eliminate it entirely. Where it is possible to meet the issue by a stipulation it is error to refuse to do so and thus unnecessarily bring before the jury the evidence of other crimes. (*People* v. *Gonzales* (1968) 262 Cal.App.2d 286 [68 Cal.Rptr. 578].) This is particularly true where the other crime involved the use of narcotics. There is a grave danger that, notwithstanding proper instructions as to the limited use of the evidence, the jury will nevertheless view it as affecting the reliability of the witness' testimony. (*People* v. *Davis* (1965) 233 Cal.App.2d 156 [43 Cal.Rptr. 357].) Where prior crimes are involved—only felony convictions, and then only in limited cases—are relevant on the issue of credibility.

■ Here the need for use for the limited purpose of showing motive or counteract the absence of motive would have been eliminated by the proffered stipulation.[3] In such cases the district attorney should not be allowed to "use his inflammatory and prejudicial evidence" in violation of the basic principles of *People* v. *Kelley, supra,* 66 Cal.2d 232. (*People* v. *Gonzales, supra,* 262 Cal.App.2d 286.)

It appears from the several pages of discussion of the propriety of this "rebuttal" testimony by the officer, that the trial judge did not truly weigh the relevancy of the testimony in light of the proffered stipulation against its highly prejudicial nature, but rather admitted it because the defendant had opened the door by first offering evidence of his lack of financial need. But this so-called opening of the door does not support the introduction of this evidence. (*People* v. *Davis, supra,* 233 Cal.App.2d 156.)

■ During the course of trial it became evident that the People intended to introduce into evidence a driver's license contained in a wallet taken from defendant when he was arrested in Oakland. This driver's license, issued to defendant under the name David Del Rio, gave a different address from defendant's address at the time of the crime and contained a photo showing defendant with his head shaved and his facial features differing from his admitted features at the time of the crime. Defendant first made a motion to suppress this license because it was not disclosed under a continuing discovery order. After that motion had been denied, defendant's counsel made a motion to suppress on the ground of illegal search and seizure. Such a motion is authorized under Penal Code section 1538.5 if timely made. The trial court ruled that it was not so made but was untimely. This ruling is specified as error and we believe correctly so.

Penal Code section 1538.5, subdivision (h) provides: "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in the municipal, justice or superior court."

The trial court ruled that the defendant did have the opportunity to make this motion before trial because he knew that his wallet was taken

---

[3]If on retrial defendant again attempts to offer the compensation payment in evidence to show lack of motive, any error in allowing the rebuttal of such testimony by evidence that defendant had an expensive drug habit would be invited error. Such evidence of lack of motive could not again be overcome by withdrawal or stipulation as the original offer would not be in good faith.

and counsel should have been aware that the wallet might contain a driver's license. This ruling ignores the discovery order.

Item 9 of the discovery order was for "Each document, book, article, object and photograph related to this prosecution which was obtained by search and seizure," together with information regarding the date, time and place of such search and officers present. Item 11 was for "all documents, papers, books, records, photographs and latent finger prints which are in the possession of the people or which have been examined by the people and law enforcement officers which are in any way relevant to any of the issues of this case."

In response to item 9 the People responded that the only item was a Bulova watch box and a piece of foam contained therein seized from defendant's mother's home during a search under warrant.

In answer to 11 the People referred to latent finger prints and photographs not including the one contained in the license.

Neither the driver's license nor the wallet were mentioned in either response, although they had been in possession of law enforcement officers long before the discovery motion and answers were made. The discovery order was a continuing one and at least by January 30, 1974 (two weeks before trial) the district attorney had obtained a certified copy of this driver's license and must have determined to use it. No disclosure was made to defense counsel.

Under these circumstances the defendant cannot fairly be said to have had an opportunity to present a Penal Code section 1538.5 motion before trial. Although he may have known a wallet was taken on his arrest, he had a definite indication that the People did not consider it material to the case. If the People can ignore a discovery order and then say, "but you should have guessed we were intending to use this evidence and so have made a motion to suppress it under Penal Code section 1538.5 before trial," the courts will be inundated with unnecessary and useless pretrial proceedings. Careful counsel will be forced to make motions to suppress every item they can possibly conceive might be in possession of the police whether the police or the People consider them relevant or not. Even if it can be technically said defendant had an opportunity to present the motion before trial it was an abuse of discretion for the trial court to deny discovery during trial under the facts of this case.[4]

---

[4]No long delay would have been involved in holding a 1538.5 hearing. The officer making the arrest and seizure was in court the following court day. No lengthy presentation of evidence would appear to have been necessary or called for.

Nor can the existence and availability of certified copies of the driver's license excuse not granting a 1538.5 hearing. But for the original seizure by the police, the People would have had no knowledge of the existence of a license issued to defendant under the name of Del Rio. Such copies would have been the fruit of the original seizure should that seizure be held upon hearing to have been unreasonable.

Nor can the error be said to be nonprejudicial. The pictorial representation of the changes effected by defendant in his appearance may have been far more telling than any oral description. This license could have been a key factor in persuading the jury that defendant's flight from Los Angeles was motivated by a consciousness of guilt, rather than for reasons claimed by defendant.

■ The rejection of the testimony of Dr. Nathan Murillo, like the rejection of the testimony of Dr. Robert Shomer, was a matter within the discretion of the trial judge for the same reasons.[5] Furthermore the judge purported to act under Evidence Code section 352 in determining that the evidence might lead to the confusion of the jury and would occupy the court's time unnecessarily. We cannot say that the trial judge abused his discretion in declining the offer of Dr. Murillo's testimony.

■ Appellant complains that his counsel was unduly restricted in oral argument. It does appear that he was not permitted to refer to magazine and newspaper articles reflecting illustrations of incidents of misidentification, a matter of common knowledge, and which should have been allowed under *People* v. *Woodson* (1964) 231 Cal.App.2d 10 [41 Cal.Rptr. 487], and that he was stopped from reading from a book merely because he was reading and not because the court examined what he intended to read. This violates the rules of *People* v. *Travis* (1954) 129 Cal.App.2d 29 [276 P.2d 193], which allows reading of material stating proper argument in language counsel feels is better than his own. This is of course not to say that counsel may get expert opinion on matters of scientific theories or experiments, which evidence has been excluded, before the jury by the simple expedient of reading so-called scientific literature in argument. To the extent he was restrained from doing this the trial court's ruling was proper. To the extent there was error in excessive restriction it was nonprejudicial. Counsel was allowed to fully state these considerations in his own words without reference to supporting authorities.

---

[5]Dr. Murillo, a psychologist, was offered as an expert to testify on possible innocent motivations for flight.

Other alleged errors will not occur on retrial. Any possible defect resulting from lack of any instruction on the use of a firearm should not reoccur.

The judgment of conviction is reversed and the cause remanded for a new trial.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied May 8, 1975, and on May 21, 1975, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied June 19, 1975.