[Crim. No. 8622. Third Dist. Jan. 5, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
J. C. BOOTHE, Defendant and Appellant.

**COUNSEL**

Donald M. Perkovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Charles P. Just, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JANES, J.**—A jury convicted defendant of first degree robbery (Pen. Code, §§ 211, 211a.) He appeals from the judgment.

On the evening of October 17, 1975, defendant went with his wife and her children to the El Paso Cafe in downtown Sacramento. Between 10:30 p.m. and 11 p.m., defendant left the cafe by himself after telling his wife that he was going to the Gold Nugget, a nearby cardroom. The Blue Ribbon Cafe is located in the same area. At approximately midnight, the bartender at the Blue Ribbon was robbed at knifepoint by a customer who had entered the premises an hour before. At trial, the bartender identified defendant as the robber. He was also identified by the Blue Ribbon manager, who arrived while the robbery was in progress and encountered defendant as defendant was leaving the premises.

Defendant testified in his own behalf that he departed from the Blue Ribbon prior to the robbery and returned to the El Paso Cafe after stopping at the Gold Nugget and the nearby apartment of a female acquaintance.

### I

After the People rested their case-in-chief, defendant made a motion to preclude the prosecutor from using a 1969 California conviction of first degree robbery for impeachment purposes if defendant elected to testify. (See *People* v. *Beagle* (1972) 6 Cal.3d 441, 451-454 [99 Cal.Rptr. 313, 492 P.2d 1].) The court denied defendant's motion, but on its own motion excluded two 1960 convictions in Alabama—one for second degree burglary and the other collectively designated "Burglary, Grand Larceny and Receiving Stolen Property." Subsequently, upon defendant's direct examination, his attorney elicited the fact of the 1969 conviction; and, upon cross-examination, the prosecutor obtained defendant's admission as to the degree of the prior.

Defendant contends that the court abused its discretion when it permitted impeachment with the 1969 conviction. The contention fails. The court properly exercised its discretion when it excluded the Alabama priors, apparently because they were so remote. (See *People* v. *Antick* (1975) 15 Cal.3d 79, 99 [123 Cal.Rptr. 475, 539 P.2d 43]; *People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) The record suggests that the 1960 convictions may have been excluded on the additional ground that they were not,

according to the prosecutor, "constitutionally proper." There thus was available to the People for impeachment purposes no prior other than the one in 1969. "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (*People* v. *Beagle, supra,* at p. 453.)

Neither *People* v. *Antick, supra,* 15 Cal.3d 79, nor *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], is inconsistent with our conclusions herein. In *Antick,* abuse of discretion was found where the priors used for impeachment were remote and the case "was clearly a close one, there being no direct evidence linking defendant to the charged offenses." (15 Cal.3d at pp. 98-99.) Neither of those factors is present in the instant case. In *Rist,* where (as here) the defendant was convicted of first degree robbery, abuse of discretion was found where (as here) a prior robbery conviction was used to impeach the defendant. In *Rist,* however, unlike the case at bench, at least one dissimilar nonremote prior was available for impeachment purposes. Rather than laying down a rule that similar priors could never be used for impeachment, the court said in *Rist*: "We observed in *Beagle* that prior convictions for the same crime should be admitted *sparingly.* [Citation.] With dissimilar priors available reason fairly dictated that the trial court exclude defendant's robbery conviction as a showing of defendant's possible dishonesty could have been accomplished by use of his far less prejudicial forgery conviction." (16 Cal.3d at pp. 220-221.) (Italics added.) Moreover, in *Rist* (unlike the instant case) the record disclosed that the ruling permitting impeachment with the similar prior "was based upon the practice of the [trial] court and not upon an exercise of discretion." (*Id.,* at p. 223.) Additionally, in *Rist* (unlike the instant case) the defendant did not testify, and the Supreme Court therefore said: "It is thus not possible for us to determine on the record before us the degree of prejudice suffered by defendant because of the court's error in failing to grant his motion, and the usual tests for concluding that an error requires the reversal of a judgment of conviction are not applicable." (16 Cal.3d at p. 223.) Even if it be assumed in the case at bench that the court abused its discretion as to the 1969 prior conviction, we have examined the entire cause and are of the opinion that no miscarriage of justice resulted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## II

The court refused defendant's request for the so-called *"Guzman"* instruction. (See *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 386-388

and fn. 1 [121 Cal.Rptr. 69].) As *Guzman* itself indicates (*id.,* at p. 388), such refusal was nonprejudicial since the jurors were instructed as to the factors they could consider in judging the credibility of witnesses (CALJIC No. 2.20), and were also instructed that defendant was entitled to acquittal if the circumstances of his identification were such that the jurors had a reasonable doubt concerning the accuracy of the identification (CALJIC No. 2.91).

■ Notwithstanding defendant's objection, the court properly included former CALJIC No. 22 (Rev.) in its instructions to the jury.[1] Defendant does not contend that the court erred when it gave CALJIC No. 2.90, the standard instruction pertaining to the presumption of innocence, reasonable doubt, and the People's burden of proof in a criminal case. Except for its added definition of "moral certainty," former CALJIC No. 22 (Rev.) substantially restates a portion of CALJIC No. 2.90. The current (3d) edition of CALJIC does not define "moral certainty." The term was correctly defined by former CALJIC No. 22 (Rev.). (See Code Civ. Proc., former § 1826.) Defendant makes a single argument in support of his claim that former CALJIC No. 22 (Rev.) misstates the law; he asserts that the challenged instruction suggests that the only proof of guilt required is "a strong suspicion" thereof. No such suggestion can even remotely be inferred from the instruction.

### III

Prior to defendant's arrest, his wife became suspicious that he committed the robbery. She showed a photograph of him to Chris Rodis, manager of the Blue Ribbon Cafe. Upon seeing the picture, Mr. Rodis thought he recognized defendant as the robber and notified the police. As previously stated, Mr. Rodis identified defendant at trial.

■ Defendant contends that his in-court identification by Mr. Rodis was tainted by his wife's pretrial display of the picture to the witness. (Cf. *Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) The contention fails. Defendant made no objection to the identification testimony given by Mr. Rodis. Defendant thus waived the claimed error. (*People* v. *Hoiland* (1971) 22 Cal.App.3d 530, 541 [99 Cal.Rptr. 523]; *People* v. *Hawkins* (1970) 7 Cal.App.3d 117, 124

---

[1]Former CALJIC No. 22 (Rev.): "The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Moral certainty only is required, which is that degree of proof which produces conviction in an unprejudiced mind."

[86 Cal.Rptr. 428].) Nor does the record show that defense counsel failed to make the objection because of lack of awareness of the facts or the law, or that such omission resulted in withdrawal of a crucial defense. (*People* v. *Jenkins* (1975) 13 Cal.3d 749, 753-755 [119 Cal.Rptr. 705, 532 P.2d 857]; *People* v. *Najera* (1972) 8 Cal.3d 504, 516-517 [105 Cal.Rptr. 345, 503 P.2d 1353].)

Moreover, defendant cites no authority (nor has our own research found any) for the proposition that the rule of *Simmons* v. *United States,* *supra,* 390 U.S. at page 384 [19 L.Ed.2d at page 1253], is applicable to pretrial photographic identification procedures conducted by private citizens, such as defendant's wife, who are not shown to have acted as actual or ostensible agents of the police. (Cf. *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628, 632 [114 Cal.Rptr. 114, 522 P.2d 674]; *People* v. *Rogers* (1943) 22 Cal.2d 787, 805 [141 P.2d 722]; *People* v. *Brown* (1961) 198 Cal.App.2d 253, 261 [17 Cal.Rptr. 884].)

## IV

Having waived the privilege applicable to confidential marital communications (Evid. Code, § 980), defendant's wife testified for the People that defendant returned to the El Paso Cafe shortly after the robbery and made certain inculpatory statements. Prior to such testimony, defendant claimed the same marital privilege and requested the court to instruct his wife not to testify concerning any confidential statements made to her by him. Upon the prosecutor's assurance that defendant's wife would not be questioned about statements made to her by defendant outside the presence of other persons, defendant did not pursue his request for an instruction; and his wife's foregoing testimony was subsequently received without objection.

Defendant contends that the evidence failed to show that his inculpatory statements were made other than in confidence to his wife. He asserts that the eliciting of his wife's testimony reflects prosecutorial misconduct. The contentions are without merit. Quite apart from defendant's failure to preserve the point by appropriate objection when his wife testified, the evidence was uncontroverted that the statements were made by him in the immediate presence of his 26-year-old stepdaughter. In fact, according to the stepdaughter's testimony, at least one of the statements was made to her rather than to defendant's wife.

V

■ Defendant contends that the fact of his being armed with a deadly weapon at the time of the robbery (Pen. Code, § 211a) was required to be separately found by the jury and orally pronounced by the court at the time of sentencing.

None of the authorities cited by defendant support his contention. Count one of the information charged that defendant "was armed with a deadly weapon, to wit, a knife," when the robbery was committed. The jury's verdict was that defendant was guilty of first degree robbery "as charged in Count One of the Information . . ." Such verdict necessarily included a finding that defendant was armed with a deadly weapon at the time of commission of the offense.

Judgment was imposed under count one for a conviction of first degree robbery. Construing the judgment together with the information and verdict (*People* v. *Becker* (1947) 80 Cal.App.2d 691 [181 P.2d 958]), the judgment was necessarily based upon the jury's finding that defendant was armed with a deadly weapon when he committed the robbery.

The judgment is affirmed.

Puglia, P. J., concurred.

**REYNOSO, J.**—I concur in affirming the judgment but disagree with that portion of the majority opinion which concludes that the trial court did not abuse its discretion in permitting impeachment of defendant by the use of a prior conviction.

Defendant's contention is grounded upon *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. The apparent rationale of my majority brethren's opinion is that because "[t]here thus was available to the People for impeachment purposes no prior other than the [similar] one in 1969," the trial court did not abuse its discretion when it permitted defendant to be impeached with the 1969 robbery prior.

The majority's rationale posits a broad-brush admissibility for impeachment purposes of a nonremote prior similar to the current alleged offense so long as the prior is the only one available to the People for impeachment purposes. In this regard, the majority's carte blanche

approach flies in the face of *Beagle's* admonition that those prior convictions which are for the same type crime as that currently alleged should be admitted *sparingly* because of their unduly prejudicial effect. (6 Cal.3d at p. 453.) The observation in *Beagle* that, as a general rule, felony convictions bearing on veracity are admissible, does not detract from the caution the trial court has been mandated to exercise. This is particularly true in dealing with a similar prior in view of the "inevitable pressure" on jurors to believe "if he did it before he probably did it again." (*Ibid.*) Admissibility which is allowed "sparingly," as thus cautioned by the state Supreme Court, can only embrace admissibility which is granted in the exceptional case.

At the time when the trial court was called upon to rule on the *Beagle* exclusionary motion, nothing in the evidence indicated that this case was an exceptional one favoring admissibility of the similar prior. Before the court ruled on the motion, defendant had been identified at trial by two eyewitnesses as the alleged offender. Eyewitness identification as part of the prosecution's case-in-chief is routine; it does not make for an exceptional case.

Admission of a similar prior is so prejudicial that, in obedience to *Rist*, the trial court should proceed with great caution. Only when it appears that the need for impeachment is greater than the certain prejudice should the similar prior be admitted. Manifestly, such will be a rare case. That is, prior convictions for the same crime will be admitted sparingly.

Upon an examination of the entire cause, I am of the opinion that the court's abuse of discretion in admitting evidence of the 1969 prior did not result in a miscarriage of justice. The defendant did testify. The jury had all the facts before it. The case for the prosecution was very strong. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Another court, upon a fact situation much weaker for the prosecution, has held the introduction of a similar prior to be reversible error. (*People* v. *Roberts* (1976) 57 Cal.App.3d 782 [129 Cal.Rptr. 529].)

Appellant's petition for a hearing by the Supreme Court was denied March 3, 1977.