[Crim. No. 17016. Fourth Dist., Div. Three. Feb. 29, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ROSS MONROE BROWN II, Defendant and Appellant.

### COUNSEL

Cohen, Stokke & Davis and Robison D. Harley, Jr., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, A. Wells Petersen and J. Richard Haden, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**CROSBY, J.**—Ross Brown II appeals his conviction of burglary (Pen. Code, § 459), attempted robbery (Pen. Code, §§ 664, 211), and assault with a deadly weapon (Pen. Code, § 245, subd. (a)), claiming the court inadequately instructed the jury on reasonable doubt as to eyewitness identification and improperly permitted witnesses to explain their bias against him.

I

Gerald Clements, owner of a Union Oil gas station in the City of Orange, was alone in his office on December 3, 1981, when a man appeared at the doorway with a shotgun. Clements and the man struggled briefly before Clements escaped and telephoned the police. Within 15 minutes of the attack, Clements described the man to officers as a white male, 6 feet tall, 200 pounds, with several days' growth of facial hair and wearing a plaid Pendleton-type jacket and dark pants.

On several occasions during the next few months, Clements saw a man fitting the assailant's description using a pay telephone at the station. Clements photographed him and advised investigating officers. Based on this identification, Bill Solano, a resident of an apartment building near the gas station, was arrested.

Joseph Hallett, acquainted with both Brown and Solano, then told police Brown, not Solano, was the robber. Clements was subsequently shown a photograph of Brown and confirmed Hallett's information. He admitted his previous identification of Solano was erroneous. Clements also identified Brown in a jail lineup, at Brown's preliminary hearing, and at trial.

Hallett, Solano, and a third Brown acquaintance, Jim Paulus, testified at trial. After receiving immunity, Solano and Paulus testified on the night of the crime, Brown borrowed Paulus' shotgun to "scare somebody" who

owed Brown money. This individual lived in Solano's apartment building, and Brown sent Paulus inside to see if the man was home. When Paulus returned to the car, however, Brown was gone. Solano arrived home a few moments later, saw Paulus, and joined him on the street. They heard a gunshot and saw a man they could not identify run from the nearby gas station. Brown then appeared with the weapon and said he had just attempted to rob the gas station. Brown later admitted the attempted robbery to Hallett. Solano recalled Brown had a beard and moustache on the evening in question but said he wore a navy-blue knee-length jacket.

Brown denied he was the assailant. He and another witness testified he was in a friend's garage developing photographs at the time of the robbery attempt.

## II

The court gave CALJIC No. 2.91 (reasonable doubt as to the identity of defendant as perpetrator of charged offense)[1] and CALJIC No. 2.20 (credibility of witnesses),[2] but refused Brown's request for a special instruction which listed factors the jury could consider in determining whether a reasonable doubt exists as to an identification, including "any inaccurate or

---

[1]Former CALJIC No. 2.91 read, "The burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of defendant as the person who committed the offense before you may convict him. If, from the circumstances of the identification, you have a reasonable doubt whether defendant was the person who committed the offense, you must give the defendant the benefit of that doubt and find him not guilty."

[2]CALJIC 2.20 (1980 revision) reads, "Every person who testifies under oath [or affirmation] is a witness. You are the sole judges of the believability of a witness and the weight to be given the testimony of each witness. [¶] In determining the believability of a witness you may consider anything that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness, including but not limited to any of the following: [¶] The extent of the opportunity or ability of the witness to see or hear or otherwise become aware of any matter about which the witness has testified; [¶] The ability of the witness to remember or to communicate any matter about which the witness has testified; [¶] The character and quality of that testimony; [¶] The demeanor and manner of the witness while testifying; [¶] The existence or nonexistence of a bias, interest, or other motive; [¶] Evidence of the existence or nonexistence of any fact or bias testified to by the witness; [¶] The attitude of the witness toward the action in which testimony has been given by the witness or toward the giving of testimony; [¶] [A statement previously made by the witness that is [consistent] [or] [inconsistent] with the testimony of the witness;] [¶] [The character of the witness for honesty or truthfulness or their opposites;] [¶] [An admission by the witness of untruthfulness;1] [¶] [The witness' prior conviction of a felony.]"

incorrect identifications."[3] Brown's request was based on the conclusion in *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826] and *People* v. *Guzman* (1975) 47 Cal.App.3d 380 [121 Cal.Rptr. 69] that it was error, albeit nonprejudicial in those cases, to refuse a requested instruction concerning proof beyond a reasonable doubt of an eyewitness identification of the defendant. Here the trial court noted the proposed instruction was unwieldy in form and was beside the point of the defense theory of the case.

■ A defendant is entitled to instructions which direct the jury to evidence from which reasonable doubt of his or her guilt may be inferred. (*People* v. *Hall, supra,* 28 Cal.3d 143, 159; *People* v. *Guzman, supra,* 47 Cal.App.3d 380, 387.) ■ In *People* v. *Aho* (1984) *ante,* pages 658, 661 [199 Cal.Rptr. 671] and *People* v. *Coates* (1984) *ante,* pages 665, 669 [199 Cal.Rptr. 675], we hold CALJIC Nos. 2.20 and 2.91 are not alone sufficient to render the failure to give a requested instruction linking reasonable doubt to identification harmless error; the facts of each case, along with the refused instruction, must be reviewed. (*People* v. *Aho, supra, ante,* p. 660.)

■ Here, the trial court noted the jury should take the listed factors into consideration but had "difficulty putting it in the form of a jury instruction" and denied the request. Although we do not particularly share the concern of the court with the form of this instruction, "[t]he time is past when a trial judge may refuse an otherwise proper instruction because of the use of an improper word." (*People* v. *Guzman, supra,* 47 Cal.App.3d 380, 386). The court erred by failing to correct and give the instruction in a satisfactory form. (*People* v. *Coates, supra, ante,* pp. 670-671.)

■ An instructional error is harmless when the facts indicate the instruction would not have led to a more favorable result for the defendant. (*People* v. *Aho, supra, ante,* p. 663.) Here, Brown admitted the crime to three persons, and his attorney thoroughly covered the identification issue during closing argument. On this record, it is not reasonably, or even remotely,

---

[3]Brown's proposed instruction provides, "In determining whether reasonable doubt exists as to the identification you may consider anything that has a tendency in reason to prove or disprove the accuracy of the witness' identification, including but not limited to any of the following: [¶] (1) the opportunity of the witness to view the criminal at the time of the crime; [¶] (2) the physical conditions at the time of the crime, [¶] (3) the witness' degree of attention; [¶] (4) the accuracy of the witness' prior description of the criminal; [¶] (5) the level of certainty demonstrated by the witness at the confrontation; [¶] (6) the length of time between the crime and the confrontation; [¶] (7) any inaccurate or incorrect identifications; [¶] (8) any occasion in which the witness failed to identify the defendant; [¶] (9) the number of confrontations between the witness and the defendant; [¶] (10) the number and type of alternatives in the matching and recognition process; [¶] (11) any statement concerning identification made by the witness which is consistent or inconsistent with his testimony on identification."

probable Brown would have obtained a more favorable result had the proper instruction been given.

### III

Brown next contends he was denied the right to a fair trial because prosecution witnesses were permitted to explain their admitted bias on re-direct examination. The argument lacks merit, but any error in admitting the evidence could hardly have been prejudicial. The stated reason for the bias, Brown's participation in the charged offense, was already in evidence. (*People* v. *Mullen* (1953) 115 Cal.App.2d 340 [252 P.2d 19].)

Judgment affirmed.

Wallin, Acting P. J., and Sonenshine, J., concurred.