[Crim. No. 44993. Second Dist., Div. Seven. Apr. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CURTIS PERRY et al., Defendants and Appellants.

COUNSEL

David F. Blaisdell and Joseph F. Walsh for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Mark Alan Hart and Ruby A. Theophile, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SMERLING, J.*—Defendants Curtis Perry and Dennis Robinson appeal from jury convictions for robbery, assault with a deadly weapon and grand theft auto on the grounds that evidence presented to the jury regarding a related criminal episode was unduly prejudicial within the meaning of Evidence Code sections 1101 and 352 and that the prosecutor engaged in misconduct during closing argument. In addition, defendant Robinson contends that the trial court's refusal to sever two counts charging codefendant Perry, alone, with robbery and assault with a deadly weapon, and failure to instruct the jury as to the specific intent requirement of aiding and abetting, established by *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], demand reversal.

*Assigned by the Chairperson of the Judicial Council.

We find that defendants' contention concerning the other crimes evidence is dispositive and requires reversal. Consequently, we do not reach defendants' remaining contentions.

## I. *Statement of Facts*

Defendants were jointly charged in a 28-count information with a series of crimes arising from a rampage during the period May 20, 1982, through June 24, 1982. Defendants were jointly charged with some crimes and separately charged with others. On the eve of trial defendants pled guilty to 10 counts, including in pertinent part an attempted murder and aggravated robbery of one Frank Irey, and also admitted various enhancements. They were subsequently sentenced to 19 years in state prison pursuant to their guilty pleas.

All told, eight separate incidents, including the "other crimes" Irey incident, were presented to the jury. The first such incident (counts 1-3) involving defendant Perry, alone, occurred at the Irish Castle Bar in Van Nuys on May 20, 1982, at 5 a.m. Two masked black males, one of whom was later identified as defendant Perry, entered the bar with guns drawn. Defendant Perry kicked and pistol-whipped one victim, and the unidentified accomplice threatened to kill a second victim. The two robbers took both victims' wallets, a bottle of liquor and a revolver later recovered from defendant Perry's residence.

In the second incident (counts 13 and 14), occurring at a Van Nuys service station on June 8, 1982, at 10:15 p.m., defendant Robinson, alone, was charged with stealing at gunpoint a wallet and a Mazda RX7 automobile with personalized license plate "PARFOIS." During trial the victim testified that defendant Robinson reasonably resembled the perpetrator.

The third incident (count 15) also occurred on June 8, 1982, about one hour later, at 11:15 p.m. Both defendants were charged with the armed robbery of a Van Nuys "Stop N Go" market, using the previously stolen Mazda as a getaway car. The property stolen included money, a bottle of liquor and packages of electrical batteries similar to ones later found at defendant Perry's residence. Although masks were not used, the victims were only able to identify defendant Perry. Circumstantial evidence, in particular use of the Mazda automobile and proximity in time to the previous incident, placed defendant Robinson at the scene. A black female passenger was also observed in the car.

The fourth incident (count 16) took place 25 minutes later that same night, i.e., about 11:40 p.m. Both defendants were charged with the armed rob-

bery of Rosemarie Jones in a parking lot outside the Cafe Francois in Burbank. The defendants approached Ms. Jones in the Mazda RX7, which was also occupied by a third person. Ms. Jones identified defendant Perry as the person who exited from the vehicle with gun drawn and took her purse. She was not able to identify defendant Robinson; hence, the prosecution relied on the circumstantial evidence mentioned above to establish his presence as the driver aider and abettor.

The fifth incident, which resulted in defendants' pleas to robbery and attempted murder, took place at the Irey Jewelry Store in Tujunga on June 9, 1982, about 12:30 p.m. The defendants walked into the store and pulled their guns. The owner of that store, Mr. Irey, grabbed his own gun and fired a warning shot. Defendant Robinson returned fire, hitting Mr. Irey in the collarbone, severing three nerves and causing him permanent loss of functional use of his left arm. Thereafter, as Mr. Irey lay on the floor, one of the defendants placed a gun to his head, demanded money and pulled the trigger, causing the gun to click without discharging. The defendants took various items of jewelry and fled in the Mazda automobile. The victim and witnesses positively identified both defendants as the perpetrators.

The sixth incident (counts 20-23), the only one outside the San Fernando Valley, took place in a parking structure in the Westwood area of Los Angeles on June 21, 1982, about 2 a.m. Two black males, brandishing guns, robbed four persons getting into a Datsun automobile bearing license plate "4 RJS." Three wallets and the car, itself, were taken; and one of the victims was pistol-whipped. A third person was seen driving off with the suspects in the Datsun. Only defendant Robinson was positively identified and the prosecution relied on circumstantial evidence to tie in defendant Perry.

The seventh incident (counts 25 and 26) occurred later the same morning about 11:30 a.m. Defendant Perry was charged with robbing a Sherman Oaks Straw Hat Pizza Parlor at gunpoint, using the previously stolen Datsun automobile as a getaway car. An unidentified person, possibly a female, was also present in that vehicle.

The last incident (counts 27-28) occurred on June 24, 1982, about 10 a.m. at the Chalet Liquor Store in Sylmar. Two masked black males entered that store, pistol-whipped the clerk, took money, the victim's wallet and a bottle of liquor and fled in the Datsun. Only defendant Perry was positively identified, and only he was charged.

The defendants presented evidence directed at impeaching the testimony of prosecution witnesses, particularly on the issue of identification.

The entire jury trial lasted 20 days, a substantial portion of which was taken up with the related Irey Jewelry Store incident. The jury deliberated four days before returning a verdict acquitting defendant Perry of the Westwood incident (counts 20-23) and convicting defendants on the remaining counts. Thereafter, defendant Robinson was sentenced to twelve years, four months consecutive and defendant Perry to seven years, four months consecutive.

## II. *Other Crimes Evidence*

The most serious error asserted by defendants is the prosecution's use of evidence of an aggravated robbery and attempted murder to establish the identities of both defendants in counts where one or the other of them was not identified by percipient witnesses. We conclude that though such evidence was probative of identity, it was inordinately prejudicial and thereby requires reversal of all the jury convictions.

In *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883], the California Supreme Court set forth a three-step analysis for determining whether the other crimes evidence is properly admissible. A trial court must determine whether the other crimes evidence is (1) material to a fact in dispute; (2) whether it has a tendency to prove such material fact; and (3) whether other evidentiary rules, including the rules against unduly cumulative or prejudicial evidence, bar admission. The high court also reiterated the longstanding admonition that "If there is any doubt, the evidence should be excluded." (*Id.*, at p. 318.)

Application of this analysis to the case at bench establishes that the attempted murder-robbery episode at the Irey Jewelry Store was, indeed, material to the key factual issue at trial, namely identity, and that such evidence would reasonably assist the jury in determining identity. However, application of the third factor, requiring consideration of cumulativeness and prejudice, requires a finding of error.

In order to qualify for admission into evidence under Evidence Code section 1101, "other crimes evidence" relating to identity of a defendant must possess "common marks which, considered singly or in combination, support the strong inference that the current crime bears his signature." (*People* v. *Alcala* (1984) 36 Cal.3d 604, 632 [205 Cal.Rptr. 775, 685 P.2d 1126]; see also *People* v. *Thornton* (1974) 11 Cal.3d 738, 756-758 [114 Cal.Rptr. 467, 523 P.2d 267], cert. den. (1975) 420 U.S. 924 [43 L.Ed.2d 393, 95 S.Ct. 1118], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

Here, the modus operandi in the Irey robbery—use of weapons and flight in an automobile—alone, does not render that crime sufficiently distinct to establish identity. Rather, the Irey incident resembles all too many armed robberies. (Cf. *People* v. *Haston* (1968) 69 Cal.2d 233, 247-248 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Alcala, supra,* 36 Cal.3d at p. 632.) "If admission of proof of other crimes were to be hinged upon a showing of methods common to most or many robbery practitioners, then application of the inclusionary rule would be so broad as to nullify the principle that a defendant is not to be convicted because the prosecution can prove, on his prior (or subsequent) record, that he is a bad man. Assertion of the principle of exclusion as a preliminary to its avoidance becomes mere pretense." (*People* v. *Adamson* (1964) 225 Cal.App.2d 74, 79 [36 Cal.Rptr. 894].)

Of course, use of the Mazda automobile in the Irey incident tends to circumstantially connect defendant Robinson to preceding robberies involving that car, wherein he was not identified. However, such inference was not of great assistance to the prosecution in that defendant Robinson was identified as the thief of the vehicle.

Instead, the true significance of the Irey episode lies in the fact that it is the only incident where both defendants were identified as acting together. In other words, as to counts 15 and 16, charging both defendants, where defendant Perry is identified but defendant Robinson is not, the Irey incident would establish that defendant Perry's unidentified accomplice was defendant Robinson; and vice versa as to counts 20 through 23. Such a set of circumstances has been held to elevate the distinctiveness of otherwise pedestrian crimes to the requisite level permitting admissibility. (*People* v. *Haston, supra,* 69 Cal.2d at p. 249; *People* v. *Cavanaugh* (1968) 69 Cal.2d 262, 273-274 [70 Cal.Rptr. 438, 444 P.2d 110]; *People* v. *Malich* (1971) 15 Cal.App.3d 253, 267 [93 Cal.Rptr. 87].) "It is clear that McDowell's presence, unlike the other features common to the charged and uncharged offenses, is a mark whose distinctive nature tends to differentiate those offenses from other armed robberies. There is only one Donald McDowell, and his conjunction with defendant in earlier robberies, together with his admitted participation in the robberies charged, supports the inference that defendant and not some other person was his accomplice in those charged offenses. It thus appears that evidence of the uncharged offenses has *some* probative value on the issue of identity." (*People* v. *Haston, supra,* 69 Cal.2d at p. 249.)

Nonetheless, factors present in this case affecting the balance between probative value and prejudice require a different result here.

First, the value of the Irey incident is cumulative. Other quite distinct factors connecting both defendants Perry and Robinson to the charges ap-

pear throughout the record. These include the theft of two different sporty automobiles by defendant Robinson followed by use of those automobiles as getaway cars in robberies committed by defendant Perry with a black accomplice, and the timing of the incidents, the first string of robberies occurring over a period of an hour and twenty-five minutes and the second string occurring within nine and a half hours.

Second, in this case, unlike *Haston, Cavanaugh* and *Malich,* the defense presented no alibi testimony nor any evidence directly rebutting the People's case.

Third, certain features of the Irey incident were extraordinarily prejudicial. As a result of being shot, Mr. Irey permanently lost effective use of his left arm and had to quit his profession as a jeweler; and after he was wounded and had fallen to the floor, one of the defendants put a gun to his head and pulled the trigger. These facts could not help but to inflame the jury against the defendants and have a substantial influence on its deliberations notwithstanding the trial court's limiting instruction. For example, in *People* v. *Guerrero* (1976) 16 Cal.3d 719 [129 Cal.Rptr. 166, 548 P.2d 366], a murder prosecution, our Supreme Court made the following observation in reversing as prejudicial admission of evidence of a brutal rape, admitted solely for the purposes of establishing the defendant's identity and intent: "The Lopez rape was particularly brutal and abhorrent. No limiting instruction, however, thoughtfully phrased or often repeated, could erase from the jurors' minds the picture of defendant's role in raping a 17-year-old girl and forcing her to commit oral copulation. 'The net effect to the jury was to paint a sign on [defendant] which said "rapist." [Citation.] Defendant had a right to be tried solely for the murder of Miss Santana. Instead, he found himself charged also with the rape of Miss Lopez. He deserves a new trial on relevant, nonprejudicial evidence." (*Id.,* at p. 730.) Likewise the defendants herein have a right to be tried on the pending charges rather than retried for their sordid mistreatment of Mr. Irey.

Significantly, prejudice to the defendants could have been minimized had the trial court and the prosecution accepted defendants' offer to stipulate to those aspects of the Irey incident bearing on identity and modus operandi. Such sanitization would have met the prosecution's legitimate needs while avoiding contamination of the trial with the grotesque details of defendants' already admitted offenses.[1] (*People* v. *Hall* (1980) 28 Cal.3d 143, 153-156

---

[1]At trial the prosecution expressed concern that the jury might improperly infer defendants' innocence on the open charges from their willingness to admit guilt as to others. Therefore, the prosecution argued the jury should hear the unabridged version of the Irey incident so it could appreciate the true reason for defendants' admissions, namely the seriousness of those charges. The inference feared by the prosecution is tenuous at best. It is

[167 Cal.Rptr. 844, 616 P.2d 826]; *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 389 [121 Cal.Rptr. 69]; cf. *People* v. *Barrick* (1982) 33 Cal.3d 115, 126-127 [187 Cal.Rptr. 716, 654 P.2d 1243].)

In *People* v. *Hall, supra,* 28 Cal.3d 143, the Supreme Court held that in a prosecution for the crime of ex-felon in possession of a firearm, a trial court must allow a defendant to avoid prejudice by stipulating to the felony conviction absent a clear demonstration by the prosecution that it will suffer illegitimate impairment. ■ "If the facts to which the defendant has offered to stipulate retain some probative value, then evidence of such facts may be introduced. For example, if evidence remains relevant to an issue not covered by the stipulation or admission, the evidence is admissible on the remaining issue. [Citations.] If the stipulation would force the prosecution to elect between theories of guilt, or would hamper a coherent presentation of the evidence on the remaining issues, evidence of the stipulated facts is admissible. [Citation.] Further, if a stipulation or admission is 'ambiguous in form or limited in scope or [if] during the trial of a case, a party seeks to deprive his opponent of the legitimate force and effect of material evidence. . .,' the evidence retains some probative value and is admissible. [Citation.]" (28 Cal.3d at pp. 152-153.)

*People* v. *Guzman, supra,* 47 Cal.App.3d 380, holds that the compulsion to avoid prejudice of a defendant may require stipulations going to purely evidentiary matters before a jury as opposed to elements of a crime (as in *Hall*). In that case, the defendant had testified that he had received a workmen's compensation check for $2,272.50 approximately two weeks before the robbery with which he was charged, thereby showing a lack of motive. In rebuttal the prosecution was allowed to introduce testimony that one month previous to the alleged receipt of the check the defendant had been arrested for being under the influence of a narcotic. The trial court rejected the defendant's attempt to prevent admission of this highly prejudicial testimony through stipulations that his own testimony concerning the check be stricken and that any money received had been consumed before the date of the crime. In finding error, the court stated: ■ "Evidence of prior crimes should be admitted only when there is a real issue to which such

---

equally, if not more, likely that the jury would conclude that the defendants pled guilty on the strength of the evidence. In this regard, the analysis used by Justice Kaus is instructive: " 'Before an issue can be said to be raised, which would permit the introduction of such evidence so obviously prejudicial to the accused, it must have been raised in substance if not in so many words, and the issue so raised must be one to which the prejudicial evidence is relevant.' " (*People* v. *Gregg* (1968) 266 Cal.App.2d 389, 391 [71 Cal.Rptr. 920].) In any event, whatever harm to the prosecution that might have arisen from the feared inference would have been overwhelmed by defendants' admission that they committed a similar crime together in a vicinity and at a time close to the charged acts. (See *People* v. *Sherren* (1979) 89 Cal.App.3d 752, 759-760 [152 Cal.Rptr. 828].)

evidence is directed. [Citations.] Every effort should be made to meet the issue in another way or eliminate it entirely. Where it is possible to meet the issue by a stipulation it is error to refuse to do so and thus unnecessarily bring before the jury the evidence of other crimes. [Citation.]" (*Id.*, at p. 389.)

In the case at bench the offered defense stipulation was a reasonable means of balancing the conflicting interests of the parties, and the prosecution failed to make a showing of unjust impairment; hence, the trial court was required to accept some form of the defense stipulation, whether it be a recital in the record, an instruction to the jury or carefully tailored testimony.

Lastly, the case against the defendants was reasonably close as demonstrated by the prosecution's reliance on circumstantial evidence, the length of jury deliberations (four days) and the acquittal of defendant Perry as to the Westwood incident. Under such circumstances improper admission of evidence concerning other offenses must be deemed prejudicial. (*People* v. *Anderson* (1978) 20 Cal.3d 647, 651 [143 Cal.Rptr. 883, 574 P.2d 1235]; *People* v. *Underwood* (1964) 61 Cal.2d 113, 125-126 [37 Cal.Rptr. 313, 389 P.2d 937].)

Thus, after examination of the entire record, this court finds it is reasonably probable that both of the defendants would have fared better before the jury but for admission into evidence of an unexpurgated version of the Irey incident; and as a result all the jury convictions must be reversed. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgments of conviction as to counts 1 through 3, 13 through 16, 20 through 23 and 25 through 28 are reversed; and the matter is remanded to the trial court for a new trial consistent with this opinion.

Thompson, Acting P. J., and Johnson, J., concurred.

A petition for a rehearing was denied May 13, 1985.