136 Cal.App.3d 724 (1982)
186 Cal. Rptr. 417
THE PEOPLE, Plaintiff and Respondent,
v.
DELBERT DONNELL LEVINGSTON, Defendant and Appellant.
Docket No. 41023.
Court of Appeals of California, Second District, Division Five.
October 19, 1982.
*726 COUNSEL
Robert McMahon, under appointment by the Court of Appeal, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ASHBY, J.
Appellant Delbert Donnell Levingston, aka Wilbert Bellinger, appeals from a conviction of grand theft (Pen. Code, § 487, subd. 1) contending that (1) the trial court committed prejudicial error in refusing to give a jury instruction relating to his identification, and (2) that the court abused its discretion and violated the principle of individualized sentencing by punishing appellant for his presentencing flight to deter others from similar conduct. We affirm.
The following facts were adduced at trial. On August 18, 1976, Ms. Laura Monte, a box girl at Von's market, observed a white man park his motorcycle and enter the store. A few seconds later, a blue van decorated with a desert scene pulled up next to the motorcycle. Appellant, a black man, stepped outside and entered the store. He returned five minutes later and got on the motorcycle. Ms. Monte said, "That's not yours," but appellant drove off with the van following him. Ms. Monte took down the van's license number and gave it to the police.
On September 6, 1976, a police officer spotted the van, stopped it, and arrested appellant, the driver. Three days later, Ms. Monte made a photograph identification of appellant as the man who had taken the motorcycle. She also positively identified appellant at trial.
Two witnesses testified for appellant. Richard Robertson, the owner of the van, stated that he lent it to appellant on occasion, but on August 18 he had given the van to one Michael Gray. Leonard Cullietta stated that on the *727 18th he saw appellant at Mr. Cullietta's gas station, where he was working on his motorcycle from 9 a.m. until 3 p.m.

1. The Jury Instruction.

(1) Appellant requested an instruction concerning proof of identity beyond a reasonable doubt, taken verbatim from People v. Guzman (1975) 47 Cal. App.3d 380, 386 footnote 1 [121 Cal. Rptr. 69].[1] The trial court refused to give the instruction, but instead gave CALJIC No. 2.91, a variation of the proposed instruction, and CALJIC Nos. 2.20 (credibility of witnesses) and 2.22 (weighing conflicting evidence).
Criminal defendants are entitled to an instruction relating identity to reasonable doubt. (People v. Hurley (1979) 95 Cal. App.3d 895, 900 [157 Cal. Rptr. 364]; People v. Guzman, supra, 47 Cal. App.3d at p. 387.) Appellant relies on Guzman, to support his contention that the court's refusal to give the requested instruction was prejudicial error. The trial court in Guzman, however, had given absolutely no instruction linking proof of identification with the concept of reasonable doubt. Later cases have held that CALJIC Nos. 2.20 and 2.91, which the court approved in the instant case, satisfy the Guzman requirement and made additional instructions superfluous. (People v. Sequeria (1981) 126 Cal. App.3d 1, 17-18 [179 Cal. Rptr. 249]; People v. Lybrand (1981) 115 Cal. App.3d 1, 13 [171 Cal. Rptr. 157]; People v. Hurley, supra, 95 Cal. App.3d at p. 900.)[2] Thus, appellant's contention is without merit.

2. The Sentencing.

The probation report filed for appellant's 1977 sentencing hearing recommended state prison without probation in light of appellant's *728 numerous prior convictions  including two convictions of grand theft  and his failure to respond to formal probation. Appellant, however, failed to appear for the 1977 hearing and became a fugitive. On July 13, 1981, appellant was apparently arrested in San Diego and was brought to Los Angeles for sentencing. The court received a supplemental probation report which noted that soon after appellant's flight, he began raising a family, established his own business, bought a home, had apparently lived without further law enforcement contacts,[3] and had made a "remarkable reversal in his life." The report recommended no probation, but suggested time in county jail instead of state prison.[4]
At the 1981 sentencing hearing, the trial judge reviewed the history of the case and indicated that he had read both probation reports. Defense counsel then cited appellant's good behavior since his 1976 conviction and noted that appellant had not been arrested since that time. Counsel referred to the supplemental probation report and its recommendation, and requested that the court credit appellant for time served preceding trial. The court then stated: "Counsel, the probation officer that originally investigated the case recommended state prison. In light of his prior record I think it would be the only proper penalty to be imposed. The fact that he did not show up and became a fugitive and avoided arrest for three years should not automatically entitle him now to escape punishment for the offense. [¶] In the first place it would be establishing a very dangerous precedent for all defendants out on bail to think they can become fugitives, and later come in and say they hadn't been in trouble. [¶] With his background and the offense involved in this case, I think that the original recommendation of the probation Department was the only proper and logical one, and that is the one I intend to follow." The trial judge sentenced appellant to state prison, noting that if the case were a determinative sentencing matter, he would impose the midterm of two years.
(2a) Appellant's contention is twofold. First, he argues that the trial judge improperly considered appellant's flight, punishing him for criminal activity of which he was not tried and convicted. Second, he maintains that the court violated the principle of individualized sentencing by considering not only appellant, but also the effect of a lenient sentence on others who might be encouraged to avoid sentencing in hope of improving their own records.
*729 Appellant's first argument is without merit. When the court's remarks are read in context, it is apparent that the trial judge did not punish appellant for his flight. In fact, it was appellant's counsel who directed the court's attention to the events subsequent to appellant's conviction, and it was the court who expressly refused to consider appellant's flight, either in mitigation or in aggravation of the sentence. The trial judge simply adopted the punishment originally recommended, imposing what would be the midterm sentence for appellant's grand theft conviction; he merely refused to let appellant's escape influence his present sentencing decision either way. (3) (See fn. 5.) His actions were everything but arbitrary and capricious, and do not justify a reversal. (See People v. Hernandez (1980) 111 Cal. App.3d 888, 898 [168 Cal. Rptr. 898].)[5]
(2b) Moreover, the trial judge would have committed no error even if he had considered appellant's flight. While a sentencing judge may not punish a defendant because he has illegitimate children receiving welfare support (People v. Bolton (1979) 23 Cal.3d 208, 216-217 [152 Cal. Rptr. 141, 589 P.2d 396]), because he refused to plead guilty and presented a frivolous defense (People v. Morales (1967) 252 Cal. App.2d 537, 546 [60 Cal. Rptr. 671]), because he had not been punished sufficiently for previous offenses (People v. Molina (1977) 74 Cal. App.3d 544, 552-553 [141 Cal. Rptr. 533]), a judge may consider all the facts and circumstances properly before him relating to defendant's character, his attitude towards the offense, and his amenability to rehabilitation. (See People v. Fowler (1980) 109 Cal. App.3d 557, 565-566 [167 Cal. Rptr. 235]; Pen. Code, § 1170, subd. (b).) Thus, in In re Perez (1978) 84 Cal. App.3d 168 [148 Cal. Rptr. 302], where the sentencing judge augmented the defendant's sentence because of his belief that the defendant had committed and suborned perjury, the court stated: "There are two ways in which the courts have given consideration to a defendant's perjury on the witness stand in pronouncing judgment...: (1) the imposition of additional punishment for the independent substantive offense of perjury, and (2) the denial of probation or the imposition of a lengthier sentence because a defendant's willingness to commit perjury reflects adversely upon his prospects for rehabilitation. [¶] The first clearly violates due process. When there has been no charge of perjury or conviction for that crime, due process would be denied if additional punishment were inflicted for that crime. [Citations. The second way is permissible] so long as consideration is limited to its reflection upon the character of the defendant *730 and his prospects for rehabilitation.... [¶].... [¶] ... `"The effort to appraise `character' is, to be sure, a parlous one.... [Yet] the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes.... Impressions about an individual being sentenced ... are, for better or worse, central factors to be appraised under our theory of `individualized' sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia." United States v. Hendrix, 505 F.2d 1233, 1237 (1974).' (United States v. Grayson, supra, 438 U.S. 41, 51 [57 L.Ed.2d 582, 590].)" (84 Cal. App.3d at pp. 171-172.)
Similarly, appellant's own manipulative defiance of the law by evading sentencing would have been a proper factor for the trial judge to consider. Appellant's argument must be rejected.
(4) Appellant next contends that the trial judge's comments concerning the dangerous precedential value of allowing fugitives to avoid punishment show that he abandoned the principle of individualized sentencing. This contention is not persuasive.
While "the rule that the measure of the constitutionality of punishment for crime is individual culpability is well established" (In re Rodriguez (1975) 14 Cal.3d 639, 653 [122 Cal. Rptr. 552, 537 P.2d 384]), the sentencing process as a whole has a number of other legitimate objectives as well. Thus, while section 1170 of the Penal Code declares that "the purpose of imprisonment for crime is punishment," it also admonishes the court to apply the sentencing rules of the Judicial Council.[6] Rule 410 of California Rules of Court lists seven different objectives of sentencing, among them "[p]rotecting society," and "[d]eterring others from criminal conduct by demonstrating its consequences." Rule 408(a) points out that the "enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made." Rules 414 and 416 set forth numerous criteria affecting the decision to grant or deny probation, and rules 421 and 423 list various circumstances in aggravation or mitigation of a crime for sentencing purposes. (See also People v. Warner (1978) 20 Cal.3d 678, 689 [143 Cal. Rptr. 885, 574 *731 P.2d 1237] (paramount concern in sentencing is the protection of society); In re Foss (1974) 10 Cal.3d 910, 924-925 [112 Cal. Rptr. 649, 519 P.2d 1073] (rehabilitation, isolation, and deterrence are legitimate purposes of, punishment.[7]
In the instant case, the dialogue shows that the court did not abandon individualized sentencing; instead, it carefully considered appellant's background, the offense involved, and the original probation report, and then deliberately based its decision on these factors. The judge's additional comments explaining rejection of appellant's unusual claim for leniency properly considered the effect a reduced punishment would have on society. Clemency because of good conduct during flight would not only fail to deter others from similar behavior, but would encourage it and could seriously undermine the effectiveness of the law enforcement process. Since the court based its sentencing decision on appellant's character and behavior before his flight, it complied with the principles of individualized sentencing; its additional comments regarding a contrary decision were entirely appropriate and fulfilled legitimate objectives of the sentencing procedure. (See In re Perez, supra, 84 Cal. App.3d at p. 172.)
But even assuming the judge's remarks were erroneous, any error was harmless because in light of the other articulated factors relied on by the trial judge, it is not reasonably probable that a different result would occur upon resentencing. (People v. Boerner (1981) 120 Cal. App.3d 506, 509-510 [174 Cal. Rptr. 629]; People v. White (1981) 117 Cal. App.3d 270, 281 [172 Cal. Rptr. 612]; People v. Flores (1981) 115 Cal. App.3d 67, 80 [171 Cal. Rptr. 365]; People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Appellant's reliance in this context on People v. Bolton, supra, 23 Cal.3d 208, is misplaced. Although the Supreme Court in that case stated that "a trial judge [cannot] always insulate ungermane and biased remarks at a sentence hearing by concluding his remarks with recital of the `saving' formula that sentence was imposed because of the nature of *732 the crime committed" (id., at p. 218), it is clear that in the instant case, the judge's insistence on basing appellant's sentence on his conduct before his flight was in no event a mere recital of a "saving formula." Thus, any possible error was not prejudicial to appellant.
The judgment is affirmed.
Feinerman, P.J., and Hastings, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied January 5, 1983.
NOTES
[1] The instruction requested by appellant reads as follows: "You are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is on the state to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant. [¶] In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense."
[2] Citing Guzman, the Supreme Court held in 1980 that the trial court should tailor identity instructions to the facts of the case before it. (People v. Hall (1980) 28 Cal.3d 143, 159 [167 Cal. Rptr. 844, 616 P.2d 826].) The Hall rule, however, is explicitly prospective only, and does not apply to this 1976 trial. In any case, as in Hall, "any error was harmless since CALJIC Nos. 2.20 and 2.91 were given." (People v. Lybrand, supra, 115 Cal. App.3d at p. 13.)
[3] The supplemental probation report notes appellant's disclosure that his arrest in San Diego was based on suspicion of forgery, and that a preliminary hearing on this charge had been scheduled.
[4] Both appellant and respondent mistakenly maintain that the 1981 report recommended probation.
[5] Appellant also claims that the judge improperly discounted his good behavior since 1977. This contention is without merit; although the court must consider a probation report, as it did in the instant case, it may in its discretion reject the report's recommendations in whole or in part. (People v. Municipal Court (Lopez) (1981) 116 Cal. App.3d 456, 459 [172 Cal. Rptr. 140].)
[6] As previously pointed out by this court, "[t]he legislative declaration that imprisonment has a punitive purpose is in no way inconsistent with the notion that the sentencing process as a whole has a variety of objectives. Obviously, dispositions as diverse as unsupervised probation, probation with some time in county jail, and imprisonment in the state prison serve a variety of purposes including rehabilitation and restitution." (People v. Thomas (1979) 87 Cal. App.3d 1014, 1022 [151 Cal. Rptr. 483].)
[7] Appellant cites People v. Bolton, supra, 23 Cal.3d at page 217, where the Supreme Court enumerated only three criteria for denial of probation: rehabilitation, protection of the public, and undue depreciation of the seriousness of the offense. However, the Bolton court never indicated that these criteria should from now on be the exclusive reasons for denial of probation and such an interpretation would indeed be irreconcilable with the structure of our sentencing rules. Moreover, a granting of probation because of good conduct during a period of successful evasion of sentencing might well "`unduly depreciate the seriousness of the offense....'" (Id., 23 Cal.3d at p. 217.)

Appellant's reliance on People v. Lock (1981) 30 Cal.3d 454, 457, footnote 5 [179 Cal. Rptr. 56, 637 P.2d 292], is equally unpersuasive. The Lock court merely indicated that a sentence based solely on societal concerns might violate individual sentencing principles; by contrast, the trial judge in the instant case considered the lack of deterrence of the sentence proposed by appellant only as an aside.