[No. B021798. Second Dist., Div. Three. Mar. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ABDEL KADER EDDAHBI, Defendant and Appellant.

**COUNSEL**

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Linda C. Johnson and Carolyn D. Fuson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Defendant and appellant Abdel Kader Eddahbi (Eddahbi) appeals from the judgment entered after conviction by jury of five counts of

robbery, one count of attempted robbery and two counts of kidnapping. (Pen. Code, §§ 211, 664/211, 207.)[1]

Because the trial court properly instructed the jury and did not violate the double-the-base-term rule in sentencing, Eddahbi's contentions on appeal are without merit. However, the judgment must be modified under section 654; as modified, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People* v. *Barnes* (1987) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]), the evidence established Eddahbi's modus operandi of befriending women with visible jewelry in restaurants and bars, luring them into his car on the pretext of going to another public place or following them to their cars, then robbing them of their jewelry. The five counts of robbery and one count of attempted robbery refer to six separate robbery victims.

Eddahbi committed each of his crimes in 1984. His contentions require further factual development only as to the kidnapping and robberies of Suzanne Crespi (Crespi) and Florine Clark (Clark).

Eddahbi met Crespi at a restaurant in Los Angeles. After they had conversed for some time, Crespi left to join a friend for dinner. As Crespi reached her parked car, Eddahbi drove up in his vehicle, threatened her and ordered her into his car. Eddahbi drove nine-tenths of a mile to a dark rural hillside area, took Crespi's jewelry and told her to get out of the car.

Eddahbi met Clark and a friend, Kay Olender (Olender), at a bar. Eddahbi convinced the two women to join him in his car in order to drive a short distance to another nearby establishment. However, he stopped at the far end of a parking lot and demanded the women's jewelry. Olender jumped from the back seat and out of the car despite Eddahbi's threat to shoot her. Eddahbi drove off with Clark still in the front seat, traveling a distance of approximately one-half mile to a freeway onramp. Once there he relieved Clark of her jewelry, forced her from the vehicle and sped away.

The information alleged both of these counts as kidnapping for the purpose of robbery in violation of section 209. The trial court sustained Eddahbi's section 995 motion as to the Clark kidnapping, reducing that charge to simple kidnapping in violation of section 207.

---

[1] All subsequent statutory references are to the Penal Code.

As to the charged violation of section 207, and as to that offense as necessarily included within kidnapping for the purpose of robbery, the trial court instructed the jury in the words of CALJIC No. 9.20 (1979 rev.) as follows: "Every person who, in connection with the commission or attempted commission of the crime of *robbery,* [unlawfully and with physical force moves any other person against his will and without his consent] [or] [unlawfully compels any other person, against his will and without his consent and because of a reasonable apprehension of harm, to move] for a substantial distance, that is, a distance more than slight or trivial, is guilty of the crime of kidnapping. [¶] In order to prove the commission of the crime of kidnaping, each of the following elements must be proved: [¶] 1. That a person [was unlawfully moved by the use of physical force] [or] [was compelled to move because of a reasonable apprehension of harm], [¶] 2. That the movement of such person was in connection with the commission or attempted commission of the crime of *robbery,* [¶] 3. That the movement of such person was against his will and without his consent, and [¶] 4. That the movement of such person was for a substantial distance, that is, a distance more than slight or trivial."

At sentencing, the trial court agreed with Eddahbi's counsel's suggestion the threat of great bodily harm was not involved in these crimes, then stated: "I think the other factors, however, are amply supported. The vulnerability, multiple victims, that the crime involved professionalism and similar modus operandi showing planning, premeditation, and sophistication, I think that is amply supported by the record. [¶] The great amount involved. $20,000 worth of jewelry, I would agree, is a great amount. And he certainly took advantage of a position of trust and confidence. And he certainly is a serious—does pose a serious danger to society."

The trial court selected the kidnapping of Clark as the principal term, imposing the middle term of five years. A fully consecutive middle term of five years was imposed for the kidnapping of Crespi pursuant to section 1170.1, subdivision (b), which allows such a term when the trial court imposes a consecutive sentence for two or more convictions of kidnapping involving both separate victims and separate occasions. The trial court imposed consecutive terms of one year for each of two other robberies and imposed sentence on all remaining counts concurrently.

CONTENTIONS

Eddahbi contends the trial court improperly instructed the jury on the offense of simple kidnapping and violated the double the base term rule in sentencing.

## DISCUSSION

### 1. *The kidnapping instruction suffered no prejudicial infirmity.*

Eddahbi's contention, essentially, is that kidnapping in violation of section 207, when it is committed in conjunction with the crime of robbery, has identically the same elements as kidnapping for the purpose of robbery in violation of 209. He asserts the trial court's failure to instruct the jury it must find the movement of the victims (1) was not incidental to the commission of the robberies and (2) substantially increased the risk of injury to the victims over and above that normally included in the commission of the crime of robbery, is fatal to both his kidnapping convictions. We disagree.

Although the elements Eddahbi seeks to add to simple kidnapping are relevant to a charge of kidnapping for the purpose of robbery in violation of section 209, they are not necessary for conviction of simple kidnapping. "In *People* v. *Daniels* (1969) 71 Cal.2d 1119 . . . , [our Supreme Court] held that a section 209 kidnapping did not occur where the movement of the victim was merely incidental to the commission of the underlying felony and did not substantially increase the risk of harm to the victim. In *People* v. *Stanworth* (1974) 11 Cal.3d 588, 596-604 . . . , [the court] explained that the element of an increased risk to the victim because of the asportation was unnecessary in a charge of simple kidnapping pursuant to section 207. As the Court of Appeal observed in *People* v. *Stender* (1975) 47 Cal.App.3d 413, 420 . . . , where a section 207 violation is charged, the existence of an underlying crime is relevant only 'to the extent the existence of that other crime unequivocally demonstrates the trivial nature of the movement . . . . Otherwise, the existence of another crime is not a relevant consideration as is manifestly demonstrated by *Stanworth.*'" (*People* v. *Rodriguez* (1986) 42 Cal.3d 1005, 1017 [232 Cal.Rptr. 132, 728 P.2d 202].)

The foregoing quotation rejects Eddahbi's contention. Indeed, because *People* v. *Stanworth* (1974) 11 Cal.3d 588 [114 Cal.Rptr. 250, 522 P.2d 1058], completely eliminated the *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], factors from the elements of simple kidnapping when accompanied by an underlying crime, the committee on standard jury instructions has withdrawn its approval of CALJIC No. 9.20 (1979 rev.). However, the additional and unnecessary element included in CALJIC No. 9.20, that the simple kidnapping be committed in connection with the crime of robbery, made proof of the kidnapping offense more difficult and inured only to Eddahbi's benefit. Therefore, the trial court committed no error prejudicial to Eddahbi in its charge to the jury.

2. *The sentence imposed did not violate the double-the-base-term rule.*

■ Generally, consecutive subordinate terms are limited to one-third of the middle term of imprisonment for nonviolent felonies for each conviction for which a consecutive term is to be imposed and the total of such terms cannot exceed five years. (§ 1170.1, subd. (a).) However, when a trial court imposes a consecutive term of imprisonment "for two or more convictions for kidnapping, as defined in Section 207, involving both separate victims and separate occasions, the . . . subordinate term for each subsequent kidnapping conviction shall consist of the middle term for each kidnapping conviction for which a consecutive term of imprisonment is imposed . . . ." (§ 1170.1, subd. (b).)

■ Eddahbi contends the "double the base term" limitation found in section 1170.1, subdivision (g), overrides and limits the full consecutive provisions of subdivision (b) and requires reduction of Eddahbi's term of imprisonment here to 10 years.[2]

While kidnapping is not a "violent felony" and does not expressly satisfy any of the statutory exceptions to subdivision (g), application of the double-the-base-term rule to subdivision (b) would effectively remove the sting from this provision.

Indeed, at the time of Eddahbi's offenses, kidnapping could be punished by imprisonment for three, five or seven years. (Former § 208.) Application of the double-the-base-term limitation of section 1170.1, subdivision (g), to kidnappers of separate victims on separate occasions would allow a trial court to impose only one fully consecutive term of imprisonment under section 1170.1, subdivision (b), regardless of the number of kidnappings that otherwise satisfied the subdivision (b) criteria, whenever the trial court had selected a middle term of five years as the principal term.

Moreover, even if the trial court had selected the upper term of seven years as the principal term of imprisonment, under Eddahbi's reasoning, the number of fully consecutive sentences permitted by subdivision (b) again would be limited to only one because of the five-year limit on aggregate consecutive sentences imposed by section 1170.1, subdivision (a).

---

[2] Former section 1170.1, subdivision (g), in effect at the time of the commission of Eddahbi's crimes, provided: "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term . . . unless the defendant stands convicted of a 'violent felony' . . . , or a consecutive sentence is being imposed pursuant to subdivision (c) of this section, or an enhancement is imposed pursuant to Section 12022, 12022.5, 12022.6 or 12022.7 or the defendant stands convicted of felony escape from an institution in which he is lawfully confined."

Despite the absence of express exceptions to either the double-the-base-term rule or the five-year aggregate consecutive term limit, the clear intent of subdivision (b) is to relate directly the length of the consecutive subordinate term a trial court may impose upon kidnappers of multiple victims to the number of such victims. We, therefore, hold sentences imposed pursuant to subdivision (b) of section 1170.1 to be impliedly excepted from the limitations found in both subdivisions (a) and (g).

In holding subdivision (b) unfettered by the twice-the-base-term limit, we note that despite the absence of any published opinion dealing with this apparent legislative oversight, section 1170.1, subdivision (g), has been amended, effective January 1, 1988, expressly to except consecutive terms of imprisonment imposed under subdivision (b) from its ambit. (Stats. 1987, ch. 1423, § 3.7.) We regard this belated amendment as declaratory of existing law rather than an expansion of the exceptions to the double-the-base-term rule. We perceive the legislative intent was, has been, and continues to be, that offenders who kidnap multiple victims on multiple occasions deserve multiple punishment without the benefit of the double-the-base-term limitation. ▮ To hold otherwise would run afoul of the rule of statutory construction that each provision in a law is to be construed so as not to render another "useless or deprived of meaning." (*People* v. *Jackson* (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736], overruled on another point in *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150].)

The legislative history of the 1987 amendment to section 1170.1, subdivision (g), Assembly Bill No. 1578 (1987-1988 Reg. Sess.), confirms our holding.[3] In a letter from the bill's author, Assemblyman Bronzan, to the governor the amendment is referred to as a "technical sentencing bill" which "clarifies several provisions of law in the area of determinate sentencing." "The bill explicitly states that multiple kidnapping convictions involving separate victims or separate occasions are *not* subject to 'double the base term.' This exception is now *implied* in Penal Code Section 1170.1[, subdivision](b)."

The Assembly Office of Research noted the amending bill, in addition to cross-referencing various enhancements, "makes clear (which is implied in

---

[3] We utilize certain documents regarding legislative history furnished by the Legislative Intent Service, a commercial service which provides documents relating to the origin of California statutes. For an example of its use by the Supreme Court, see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218-219 [185 Cal.Rptr. 270, 649 P.2d 912].

P.C. 1170.1[, subdivision](b)), that consecutive sentences imposed under 1170.1[, subdivision](b) are not subject to double the base term."

The Bill Analysis Worksheet prepared by the author's office, states: "Over the last several sessions of the Legislature, the Legislature has enacted enhancement statutes without properly cross referencing these enhancements. This leads to confusion and unnecessary appeals. . . . These failures to cross reference are a constant source of irritation to judges and lawyers. This bill . . . provides that subordinate terms imposed under 1170.1[, subdivision ](b) are not subject to Double the Base Term, which is certainly implied when the law allows the total subordinate term to exceed 5 years. (The 1170.1(b) amendment [adding present subdivision (b)] was the result of a 1982 Bosco bill which was enacted with an urgency clause. As a result, the [failure to provide for an] 1170.1[, subdivision ](b) exception to Double the Base Term is an oversight.)"

These expressions of legislative intent are fully consonant with our conclusion that section 1170.1, subdivision (b), is an implied exception to the double-the-base-term rule. Therefore, the trial court did not err in imposing the instant 12-year term of imprisonment.

3. *Concurrent sentences for counts V and VII must be stayed.*

Although unaddressed by Eddahbi, the People correctly point out that, pursuant to section 654, the trial court should have imposed and stayed, pending completion of the kidnapping sentence, the sentence imposed because of the robbery offenses relating to Crespi and Clark. (*People* v. *Miller* (1977) 18 Cal.3d 873, 886 [135 Cal.Rptr. 654, 558 P.2d 552].) The judgment will be modified accordingly.

CONCLUSION

The trial court properly instructed the jury and did not violate the double-the-base-term rule in sentencing.

DISPOSITION

The judgment is modified to stay execution of the sentences imposed as to counts V and VIII, the robberies of Crespi and Clark, pending service of the

sentence imposed as to counts IV, VII, I and II, and stay to become permanent when service of sentence is completed. As so modified, the judgment is affirmed.

Arabian, J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 1988.