[No. F008912. Fifth Dist. Sept. 14, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS HERNANDEZ, Defendant and Appellant.

640

COUNSEL

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, Monica Knox, Acting State Public Defender, and Linda Y. Chang, Deputy State Public Defender, for Defendent and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane N. Kirkland and Doris A. Calandra, Deputy Attorneys General for Plaintiff and Respondent.

OPINION

**BEST, J.**—Defendant was convicted by jury of five counts of residential burglary in violation of Penal Code[1] sections 459, 460 (counts I-V) and of one count of theft and unlawful driving of a vehicle in violation of Vehicle Code section 10851 (count VI). The jury also found that defendant personally used a firearm in the commission of the burglary charged in count IV in violation of section 12022.5. In a bifurcated trial, defendant was found by the trial court to have suffered a prior serious felony conviction within the meaning of sections 667, subdivision (a), and 1192.7, subdivision (c)(18).

Defendant was sentenced to an aggregate term of eighteen years and four months in the state prison: the upper term of six years for the residential burglary charged in count IV; consecutive terms of one year and four months (one-third the middle term of four years) for each of the residential burglaries charged in counts I-III and V; a two-year term for the firearm-use enhancement attending count IV; and a consecutive five-year term for the prior serious felony conviction. He was also sentenced to a concurrent term of three years for the auto theft charged in count VI. On appeal defendant challenges his convictions of the residential burglaries charged in counts I, II, III and IV contending that the trial court erroneously denied his motions to suppress (1) his confession and (2) identification testimony. Defendant further contends his proposed instruction on eyewitness testimony was erroneously denied. Alternatively, he asserts the trial court committed sentencing errors. We will affirm the convictions and remand for resentencing.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## THE EVIDENCE

### A. *Motion to suppress confession*

Detective Edward Torrez interviewed defendant on the morning of January 26, 1987, following defendant's arrest on January 24. Torrez first mentioned the purpose of the interview and asked if defendant was well enough to discuss the cases. Torrez noted that defendant seemed to have a bit of a chill and a runny nose. He asked if defendant needed some care and stated he would be willing to postpone the interview. Defendant stated he was having symptoms of heroin withdrawal but was well enough to talk and wanted to "get it over with." Defendant was then given and waived his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). Detective Jack Hergenrader entered the interview room and asked defendant if he was willing to cooperate and talk to them. Hergenrader testified that defendant was very cooperative and seemed remorseful. Torrez testified that defendant appeared to be coherent and sober. During the interview which lasted between an hour and forty-five minutes and two hours, defendant admitted the burglaries charged in counts I, II and III and made damaging admissions with reference to the burglary charged in count IV. Defendant also assisted the officers in "clearing up" additional cases by admitting his involvement in various non-charged burglaries.

Defendant testified that because he was suffering from withdrawal from heroin and cocaine he had not slept from the time of his arrest and at the time of the interview his bones ached and he had a runny nose. Mentally he was "somewhere else." The officers told him "if he worked with them they would give him some medication," "take him outside and get some food inside his stomach other than jail food," "get him some soda," "to help him feel better." Defendant admitted to burglaries he did not commit "Because they said if I helped them out they would help me out. They were taking me outside, I was getting air, and I was in the position where I would rather be outside than in the jail."

### B. *Motion to suppress identification testimony*

Count IV charged defendant with burglary of the residence of Francisco Perez. Mr. Perez was initially shown a photographic lineup by Detective Hergenrader which did not include defendant's photograph. Mr. Perez was unable to identify anyone. A few weeks later he was shown a six-photo lineup and stated that defendant's photograph "looked more like the subject than anybody else." Upon being informed that the burglar was wearing a cap, Detective Hergenrader then showed Mr. Perez a single photograph of

defendant wearing a hat. Perez still could not make a positive identification of defendant "because he had his hands up in front of his face and [Mr. Perez] couldn't get a good look at his face."

## C. *Trial*

On January 8, 1987, Francisco Perez's residence at 3833 East Pitt in Fresno was burglarized (count IV). When Perez arrived home at 12:20 p.m. that day, a white Monte Carlo was parked in his driveway. Defendant was coming out of Perez's house and he pointed a gun at Perez, who remained in his pickup truck for cover. Perez rolled the truck into his backyard, got out to hide and started yelling to his neighbors for help. Defendant pointed the gun at the neighbors who responded to Perez's cries for help, and then got into his car and drove away. Perez's guns, television, camera, VCR and other small items were missing from his house.

Samuel Bent's residence at 2036 East Clay was burglarized two days later (count II). His portable radio and VCR were missing.

On January 21, 1987, a Chrysler Cordoba, license No. 714CBB, belonging to Irene Galaviz, was stolen from her garage at 4512 East Madison (count VI). That morning Ms. Galaviz opened the garage door and started her car. She then went back into the house to get something she had forgotten. When she returned to the garage her car had been stolen.

On January 22, 1987, defendant broke into William Michels's residence at 567 West Bullard (count V). Michels's daughter, Denise, heard a thud at the front of the house while she was in the bathroom at approximately 8:45 that morning. Denise found defendant standing inside the doorway and the front door was open. Denise yelled at defendant, "Get the hell out of my house!" Defendant walked out of the house and got into a large blue American-made car parked in the driveway with someone else waiting in it. Denise, who was not wearing her glasses, followed defendant outside and read the rear license number of the vehicle, which she recalled from memory as 714CBB. Denise subsequently viewed a six-photo lineup and picked out defendant's photograph as the one most resembling the burglar.

On January 23, 1987, defendant broke into Eddie Martinez's residence at 2414 East Tyler and stole a VCR, a box of jewelry and a microwave oven (count III). At 10:30 that morning, Robert Reynoso, Martinez's neighbor, looked out his window and saw defendant running out of Martinez's house with the VCR and the microwave oven, which he loaded into the backseat of a light blue car. Reynoso described defendant as five feet eight inches tall with a long mustache and wearing jeans, a coat and a beanie. Reynoso

subsequently viewed a series of photographs at the police department and identified defendant's photograph as the one most like the perpetrator.

The following day defendant burglarized Litha Cary's residence at 2816 East Madison (count I). Cary's next-door neighbor, Thomas Cabrera, was working in his yard when he observed defendant knocking, then banging on Cary's back door. Defendant used his shoulder to push on the door, then looked through the windows. Cabrera had his mother telephone 911 and Cabrera went to get a description of defendant's vehicle parked in the alley. Cabrera gave police a description of the green Chrysler Cordoba, its license number and a description of the clothing worn by defendant. Cabrera positioned himself at a window overlooking Cary's house and watched defendant leave through the front door carrying a small bag under his arm.

Officer Curt Smith of the Fresno Police Department responded to Cabrera's call of a burglary in progress. Officer Smith observed a green Chrysler Cordoba parked in the alley south of East Madison. While hiding behind a garbage dumpster in the alley, Officer Smith saw defendant as he approached the car carrying a paper bag. Officer Smith attempted to block defendant's exit from the alley with his patrol car, but defendant dodged him by crossing a driveway. Officer Smith pursued defendant at speeds up to 50 miles per hour with his red light and siren activated. Defendant bottomed out his car when he drove through an empty lot with severe potholes. Defendant got out of his car and began running away. Officer Smith chased defendant for about one and one-half blocks before defendant gave himself up. A flat-bladed screwdriver with a bent tip was found on defendant's person.

Defendant was driven back to the Chrysler Cordoba so that Officer Smith could obtain field information and search the car. Defendant informed Officer Smith that he had a $150 a day heroin and cocaine habit. A second screwdriver and a bag were found in the Cordoba.

Thomas Cabrera was brought to the scene of the detention and he identified both defendant and the Cordoba. Officer Pete Marez corroborated Cabrera's positive identification of defendant and the car.

Litha Cary testified that although her house was in disarray, the only items missing were a pound and a half of chocolate chip cookies in a yellow bag, some cigarettes and three rolls of pennies.

Detective Edward Torrez of the Fresno Police Department testified that on January 26, 1987, he spoke with defendant about the burglary on East Madison and other burglaries. Defendant admitted that he stole the cookies

from Cary's house on East Madison, but did not take anything else because too many people were around. Defendant further stated that he found Ms. Galaviz's car with the motor running at a location on Madison Avenue and took it. Defendant also admitted taking the VCR from the 2036 Clay Street home. Regarding the burglary at 2427 East Tyler Street, defendant admitted taking the microwave oven and the VCR.

Fresno County Sheriff's Detective John Hergenrader also participated in the January 26, 1987, interview. When Detective Hergenrader told defendant that he was not going to ask questions about the burglary on East Pitt, that it was one of his better cases and a heavier case because gunshots were fired at the scene, defendant said that he did not shoot a gun. Defendant stated that the gun he took from Perez's residence did not work—it would not shoot.

## DEFENSE

Fresno County Sheriff's Detective Manuel Duenes testified regarding the substance of the information he had received from Perez on January 8, 1987, during the initial investigation at the scene. The conversation was a mix between Spanish and English. Perez stated the perpetrator was an Hispanic male, 20 to 30 years old, 5 feet 5 inches tall and weighing approximately 130 pounds. He also wore a black knit beanie cap and a dark jacket. Perez could not remember if the perpetrator had any facial hair.

## DISCUSSION

### I

### ON INDEPENDENT REVIEW, DOES THE EVIDENCE SUPPORT A FINDING THAT DEFENDANT'S CONFESSION WAS VOLUNTARY?

Defendant contends that his January 26, 1987, confession was involuntary and, therefore, should have been excluded from evidence. Although acknowledging that he waived his *Miranda* rights, defendant specifically claims that his waiver was involuntary because (1) he was suffering from drug withdrawal and (2) the police improperly induced him to waive his rights.

■ The California Supreme Court recently stated the applicable standard of review in *People* v. *Hendricks* (1987) 43 Cal.3d 584, 589-590 [238 Cal.Rptr. 66, 737 P.2d 1350], as follows: "To be admissible at trial the confession of a criminal defendant must have been made voluntarily. [Citations.] When a defendant claims that he confessed involuntarily, the prose-

cution is required under California law to prove voluntariness beyond a reasonable doubt. [Citation.] As a reviewing court we independently examine the uncontradicted facts to determine whether the trial court's finding of voluntariness was supported. [Citation.] We uphold 'the trial court's resolution of conflicts in the evidence . . . unless it is "palpably erroneous" ' [citations] and ' "accept that version of events which is most favorable to the People, to the extent that it is supported by the record" ' [citation]."

■ Defendant first contends that his confession was involuntary because he was suffering from drug withdrawal during his interview with the detectives. ■ The mere fact of being in the state of drug withdrawal does not render all confessions per se involuntary. The totality of the circumstances must be examined to determine whether the confession was the product of a rational intellect and a free will. (*In re Cameron* (1968) 68 Cal.2d 487, 498 [67 Cal.Rptr. 529, 439 P.2d 633].) "The only issue is whether the accused's abilities to reason or comprehend or resist were in fact so disabled that he was incapable of free or rational choice." (*Ibid.*)

In *People* v. *Taylor* (1980) 112 Cal.App.3d 348 [169 Cal.Rptr. 290], this court held that "The mere ingestion of drugs and alcohol does not compel the conclusion that a defendant is incapable of intelligently waiving his rights." (*Id.* at p. 361.) In that case, the defendant made incriminating admissions to police while he was in a heavy state of somnolence and heavily under the influence of heroin that he had ingested the previous evening. During the interview, the defendant would occasionally nod and fall asleep. This court found that although the defendant was heavily under the influence of heroin he never appeared confused and answered the officer's questions directly, coherently and in detail. (*Id.* at pp. 360-361; see also *People* v. *Hendricks, supra,* 43 Cal.3d 584, 590-591 [defendant drank two to three "whiskey-and-cokes" during police interview].)

■ Unlike the defendants in the *Taylor* and *Hendricks* cases, defendant was only suffering from drug withdrawal and was not actually under the influence of any substance. However, like those cases, defendant was coherent, was able to comprehend all questions asked and was not confused. Defendant indicated he understood what was going on and was well enough to discuss the cases, declining Torrez's offer to postpone the interview to a later date. Defendant also indicated a coherent understanding of Hergenrader's comments when defendant stated that he did not shoot at anyone because the gun he had stolen from the East Pitt residence did not work. Moreover, defendant did not have difficulty speaking and the officers did not have to repeat any of the questions asked. Under the totality of the circumstances, the record supports the trial court's finding of voluntariness insofar as the issue of drug withdrawal is concerned.

■ Defendant's second attack on the voluntariness of his confession and admissions is his contention that the police induced him to confess by offering him medication, sodas and a trip outside for food if he worked with them. Defendant concludes that offering medication to a junkie with a $150 a day drug habit is more than a slight pressure or inducement. In support of his contention, defendant relies most heavily on the fact that his testimony regarding the "inducements" is uncontradicted by the testimony of Detectives Torrez and Hergenrader.

In *People* v. *Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672], upon which defendant relies, the Supreme Court stated as follows: "[A]fter examining the uncontradicted facts of the present record, we conclude that defendant's first confession was involuntary as it resulted from a promise of leniency. The fact that such a promise had expressly been made was not contradicted by the testimony of either Officer Mascorro or Sergeant Sett. . . . The prosecution, which had the burden of proof on the issue, could either have asked Sergeant Sett on redirect examination whether, to the best of his recollection, a promise of leniency had or had not been made, or the prosecution could have asked Officer Mascorro, who had been present during the entire interrogation, what was said to the defendant in this regard. This the prosecution failed to do; thus, although some of the defendant's testimony was disputed, his testimony that he was told that he might get leniency from the jury if he gave a statement about the case to the police officers, remained uncontradicted.

"The People urge that even if the defendant's claim that promises had been made was not specifically contradicted by the police officers, the trial court's resolution of the voluntariness issue in favor of the People should nonetheless be sustained. They point to the overall conflict in the evidence and the inherent improbability of other aspects of the defendant's testimony in suggesting that, as a matter of assessing the credibility of witnesses, the trial court had good cause to disbelieve and obviously did disbelieve the defendant's testimony that promises of leniency had in fact been made. For this reason, the People urge that when the trial court's finding of voluntariness is based on credibility assessments, that finding should not be disturbed on appeal unless it is palpably erroneous. . . . In this case, however, the evidence relating to promises is not in conflict; therefore, if we were to adopt the rule suggested by the People, we would in effect be abrogating our duty to independently determine from the uncontradicted facts whether the confession was voluntary. We think that this would be unwise, given the importance of the constitutional rule involved. Moreover, as it has been stated in another context, '[d]isbelief [of a witness' testimony] does not create affirmative evidence to the contrary of that which is discarded.' [Citations.] Applying this rule to the present case, where the People had the

burden of proof on the issue of the voluntariness of defendant's confession, it is apparent that disbelief by the trial court of defendant's testimony would not suffice as a substitute for an affirmative showing by the People sufficient to discharge their burden." (*Id.* at pp. 612-613.)

Defendant is technically correct that his testimony that he would receive medical care, food and a trip outside if he confessed remains uncontradicted. However, there does appear to be a conflict in the evidence with regard to the medical care issue and we must assume the lower court resolved that conflict in favor of the plaintiff.

In this case, the officers were not called back for rebuttal testimony to specifically contradict or refute defendant's testimony that he would receive medical care if he would help them out. On the other hand, defendant was given the opportunity to contradict Officer Torrez's testimony. He was specifically asked whether Torrez offered to provide care and to postpone the questioning if defendant did not feel up to it. Defendant simply testified that he did not remember whether Officer Torrez made this statement. This does not constitute a contradiction of Officer Torrez's testimony. (See *People* v. *Jimenez, supra,* 21 Cal.3d 595, 612.) In essence, there are two unrefuted, yet contradictory, statements with regard to medical care. Defendant was offered medical care if he would help the officers. On the other hand, the defendant was offered medical care even if he chose not to speak to the officers at that time. Therefore, we may reasonably conclude that the offer of medical care could not have been an inducement for defendant to confess because he was offered such care whether or not he helped the officers.

With regard to the sodas, food and the trip outside, these were insufficient inducements to motivate a suspect accused of several felonies to confess to them involuntarily. Defendant does not claim that the police threatened to deprive him of care, food and drink if he did not cooperate.

With regard to the trip outside, defendant admitted that that was for the purpose of clearing paper, i.e., taking defendant out in the street and showing him different locations and asking him about burglaries. Thus, this was not offered as an inducement to confess to the instant crimes. Furthermore, it is unreasonable to conclude that defendant could have been induced to confess even if the trip outside was intended as an inducement.

With regard to the food, defendant testified that the officers would "help me get me some food in my stomach instead of having that jail food." Thus, it is not a situation where defendant had been deprived of food. Moreover, defendant was not going to be deprived of food in the future. The question, therefore, is whether this offer of civilian food, coupled with the offer of a

soda, would be sufficient inducement to be the motivating cause of defendant's confession. Again, under the totality of the circumstances, the lower court properly found that it was not, and that, indeed, the confession was voluntary beyond a reasonable doubt. The inducements that were purportedly offered in this case are not the type that would motivate a person sufficiently to render his statement involuntary. (*People* v. *Jimenez, supra,* 21 Cal.3d 595, 612; *People* v. *Hill* (1967) 66 Cal.2d 536, 549.)

## II

### DID THE COURT COMMIT REVERSIBLE ERROR WHEN IT REFUSED TO GIVE DEFENDANT'S SPECIAL INSTRUCTION REGARDING EYEWITNESS TESTIMONY?

 Relying on *People* v. *Guzman* (1975) 47 Cal.App.3d 380 [121 Cal.Rptr. 69], defendant contends the trial court erred by refusing his proposed instruction on eyewitness testimony. Although acknowledging the trial court instructed the jury in the language of CALJIC Nos. 2.91 and 2.92, defendant nonetheless contends that additional instruction was required. This contention is without merit.

The trial court properly instructed the jury on the credibility of witnesses in general (CALJIC No. 2.20 (1980 rev.)), the plaintiff's burden of proving identity (CALJIC No. 2.91 (1982 rev.)), and factors to be considered in proving identity by eyewitness testimony (CALJIC No. 2.92). Defendant appears to imply that *People* v. *Guzman, supra,* required something more. However, the *Guzman* court only held that a "defendant is entitled to an instruction relating identification to reasonable doubt." (*People* v. *Guzman, supra,* 47 Cal.App.3d at p. 387.) As pointed out in *People* v. *Levingston* (1982) 136 Cal.App.3d 724 [186 Cal.Rptr. 417], the trial court's error in *Guzman* was in failing to give the jury any instruction linking proof of identification with the concept of reasonable doubt. "Later cases have held that CALJIC Nos. 2.20 and 2.91, which the court approved in the instant case, satisfy the *Guzman* requirement and made additional instructions superfluous. [Citations.]" (*Levingston, supra,* at p. 727.)

Although defendant introduces his argument with a discussion of the *Guzman* case, it appears his actual disagreement is with the adequacy of CALJIC No. 2.92. Defendant compares the language of his proposed instruction with the instruction submitted in *People* v. *Martinez* (1987) 191 Cal.App.3d 1372 [237 Cal.Rptr. 219] and states that his instruction would have advised the jury that (1) eyewitness identification should be viewed with caution, and (2) an identification by photographic lineup should be

examined closely for reliability and the possibility of suggestiveness in that a witness may incorporate into his memory information from other sources.

CALJIC No. 2.92 contains cautionary language as follows: "In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the witness' identification . . . ." Thus, the instruction directs the jury to cautiously determine the weight to be afforded eyewitness testimony and it appears defendant's cautionary language would not have enhanced it. ▓ "A cautionary charge does not . . . pose a rule of substantive law. Rather, it is subsumed by the general supervisory powers of the trial court to assure that jurors understand and properly discharge their duties." (*People* v. *Martinez, supra,* 191 Cal.App.3d at p. 1381.) ▓ The court was not required to amend CALJIC No. 2.92 with defendant's broad advisement to use caution.

Furthermore, defendant offers no legal authority to support his contention that an advisement concerning the unreliability of photographic identification is required when a photographic lineup is used in the investigation of a crime. Indeed, one of the factors listed in CALJIC No. 2.92 is whether the witness's identification is the product of his own recollection, which is the obverse of a "suggested" identification. Moreover, since all of the eyewitnesses identified defendant in person, the reliability of an identification by photographic lineup was not at issue in this case. Therefore, defendant's contentions regarding the unreliable or suggestive photo identifications were matters properly left to cross-examination and closing argument as attacks on the credibility of the eyewitnesses.

Finally, even assuming it was error for the trial court to refuse defendant's instruction, it was harmless. Defendant confessed to, or made damaging admissions with regard to, the burglaries charged in counts I through IV and the auto theft charged in count VI, thus proving the issue of identity in those counts. Only count V relied solely on eyewitness identification for proof of identity; however, the victim's identification of defendant and the stolen Chrysler Cordoba established that defendant was also the perpetrator in that burglary. In short, the plaintiff's case was so strong that a result more favorable to defendant would not have been forthcoming had defendant's proposed instruction been given. (*People* v. *Wright* (1988) 45 Cal.3d 1126, 1144 [248 Cal.Rptr. 600, 755 P.2d 1049]; *People* v. *Martinez, supra,* 191 Cal.App.3d at pp. 1381-1382.)

## III

WAS THE IDENTIFICATION PROCEDURE IMPERMISSIBLY SUGGESTIVE, RESULTING IN A SUBSTANTIAL LIKELIHOOD OF MISIDENTIFICATION?

■ Defendant next claims that the trial court erred in denying his motion to suppress the eyewitness identification of Francisco Perez on the basis the photographic lineup was unduly suggestive. Specifically, defendant contends that he was identified through impermissibly suggestive procedures that resulted in a substantial likelihood of misidentification. This contention also lacks merit.

■ In the recent case of *People* v. *Perkins* (1986) 184 Cal.App.3d 583, 588-589 [229 Cal.Rptr. 219], this court stated the applicable principles of law as follows: "Suggestive comments or conduct that single out certain suspects or otherwise focus a witness's attention on a certain person in a lineup can cause such unfairness so as to deprive a defendant of due process of law. [Citation.] However, the reviewing court must examine the 'totality of the circumstances' in determining whether or not a lineup procedure has been unconstitutionally suggestive. [Citation.]

" 'When the fairness of a confrontation is challenged, the burden is on the defendant to establish that the confrontation resulted in such unfairness that it infringed his right to due process.' [Citation.] Defendant must show unfairness as a demonstrable reality, not just speculation. [Citation.]

"This court must uphold the court's finding below if supported by substantial evidence, and all evidentiary conflicts must be resolved in favor of said findings. [Citations.]"

At the motion to suppress the identification, Detective Hergenrader testified that he showed photographic lineups to Denise Michels and Francisco Perez. The first lineup he showed Mr. Perez did not include defendant's photograph. A week later, he showed Perez a second lineup that included defendant's photograph. Perez stated that defendant's photograph "looked more like the subject than anybody else's." Hergenrader then showed Perez another photograph of defendant wearing a hat, but Perez could still not positively identify defendant "because he had his hands up in front of his face and [Perez] couldn't get a good look at his face." Perez never made a positive identification based on the photographic lineups, but did make a positive identification of defendant at trial.

■ As pointed out by the lower court, Hergenrader did not initiate the identification procedure by showing Perez the single photograph of defend-

ant. Instead, Perez had already indicated that defendant's photograph in the multiphoto lineup looked more like the suspect than anyone else. Perez chose no one from a multiphoto lineup that had not included defendant's photograph a week earlier. Moreover, Perez's identification of defendant was only tentative, even after seeing the single photograph, indicating that the showing of the single photo of defendant had no effect. Since substantial evidence supports the lower court's finding that Hergenrader's photographic identification was a fair procedure, we reject defendant's contention that Perez's in-court identification was the product of an unfair pretrial identification procedure. (*People* v. *Greene* (1973) 34 Cal.App.3d 622, 645-646 [110 Cal.Rptr. 160].)

Defendant's reliance on *People* v. *Slutts* (1968) 259 Cal.App.2d 886 [66 Cal.Rptr. 862] is misplaced. In *Slutts,* two sisters, ages 11 and 14, witnessed the defendant commit several acts of indecent exposure. Eight days after the incident, the younger sister, Peggy, was shown five photographs of beardless men. After she tentatively identified the defendant, the investigating officer drew a beard and moustache on the defendant's picture to match the child's description of a bearded man. (*Id.* at pp. 889-890.) The court found the procedure to be fair, stating as follows: "A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police. Tested by this standard, the method used by Officer Perkins to procure the identification of defendant was fair as to Peggy . . . . The officer did not draw a beard on defendant's photograph until Peggy had first selected it as most closely resembling the man she had seen in the park. Since none of the men in the photographs had beards Peggy could not be positive that defendant was the man. Officer Perkins wanted to 'help' Peggy to make a more positive identification. To be completely fair she should have sketched beards on all of the photographs; instead she drew a beard only on defendant's picture. While this procedure was unfair to the extent that it tended to confirm the identification already made by Peggy, the unfairness did not produce the identification in the first instance, and so cannot be considered as ground for a claim of denial of due process of law." (*Id.* at pp. 891-892.)

As in the *Slutts* case, here, showing Perez the single photograph of defendant wearing a beanie did not produce Perez's original tentative identification. As such, there was no denial of due process in this case.

Even assuming, however, that the trial court's denial of defendant's motion to suppress was error, the error was harmless. Defendant admitted his involvement in the burglary by stating that the gun he took from the Perez residence did not work. Perez's testimony was merely additional proof of identity.

## IV

### Is a Remand Required Based on the Trial Court's Failure to State Reasons for Imposing Consecutive Terms?

■ Defendant further contends that a remand for resentencing is necessary because the trial court failed to state reasons for imposing consecutive terms on counts I, II, III and V.

Plaintiff points out several reasons for imposing a consecutive term are apparent and argues the record supports the sentencing decision. Thus, plaintiff submits any error which occurred was harmless. Plaintiff cites a number of cases from other courts which have applied the harmless-error rule. This court, however, has consistently refused to apply that rule in this situation. (*People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 704 [173 Cal.Rptr. 71]; *People* v. *Edwards* (1981) 117 Cal.App.3d 436, 450 [172 Cal.Rptr. 652]; *People* v. *Manning* (1982) 133 Cal.App.3d 159, 170 [183 Cal.Rptr. 727].) Under these cases a remand is required.

## V

### Did the Trial Court Err in Imposing an Additional Five-Year Term Pursuant to Section 667 Where Defendant Received Consecutive Sentencing?

■ Defendant contends that the omission of any mention of section 667 in the sentencing provisions of section 1170.1 at the time of his sentencing prevents trial courts from imposing five-year enhancements authorized by section 667 for prior serious felony convictions whenever the court decides to sentence under section 1170.1. He also notes section 667 adopts the singular form in referring to the current serious felony conviction which triggers imposition of an enhancement for prior serious felony convictions. This, defendant contends, indicates a legislative intent to impose five-year enhancements under section 667 only when a defendant stands convicted of but one current offense. As further evidence of legislative intent, defendant points out that the Legislature recently amended section 1170.1 to include section 667 in subdivision (a) of section 1170.1.

■ It is well settled that when statutory language is clear and unambiguous there is no need for construction and the courts should not indulge in it. (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148]; see also § 4.) Plaintiff contends that the language of section 667, subdivision (a), could not be clearer. It provides as follows: "In compliance with subdivision (b) of Section 1385, any person convicted of a

serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

As is readily apparent, the statute does speak in the singular number with regard to the "present offense." However, the significance of this may be easily dismissed since the Penal Code provides in its preliminary provisions that, regarding "Words used in this code . . . the singular number includes the plural, and the plural the singular . . . ." (§ 7.)

 While not quarreling with the clearness of the language of section 667, defendant emphasizes the omission of any mention of section 667 in the sentencing language of section 1170.1, which provides that "the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to section 667.5, 667.6, or 12022.1 . . . ." Although defendant is unable to point to any language in section 1170.1 which directly conflicts with the clear provisions of section 667, he relies on the rule of construction that the enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380].) Since section 667 was omitted from section 1170.1, defendant concludes that section 667 is not an exception to the consecutive sentencing provisions of section 1170.1 and, therefore, cannot apply when section 1170.1 applies. Defendant's proposed construction is strained and does not appear to conform with the intent of the electorate when it enacted section 667. Instead, it "would lead to the remarkable conclusion that the Legislature creates exceptions to a specific code section merely by failing to mention it." (*People* v. *Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294].)

On this subject, the Supreme Court has already spoken in a related matter. In *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736], the court was confronted with the question of whether subdivision (g) of section 1170.1 limited section 667 enhancements. Like subdivision (a) of section 1170.1, subdivision (g) provides certain limitations in sentencing. At that time, section 1170.1, subdivision (g), provided in pertinent part:

"The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term . . . unless the defendant stands convicted of a 'violent felony' as defined in subdivision (c) of Section 667.5,

or a consecutive sentence is being imposed pursuant to subdivision (c) of this section, or an enhancement is imposed pursuant to Section 12022, 12022.4, 12022.5, 12022.6, 12022.7, or 12022.9 or the defendant stands convicted of felony escape . . . ."

Since none of the listed exceptions applied to the *Jackson* case, defendant contended that he could not be sentenced to more than twice the base term selected by the trial court. The Supreme Court in *Jackson* disposed of the contention as follows: "The Attorney General, however, argues that the double base term limitation was abolished by Proposition 8, at least as to enhancements for serious felonies. He points first to the constitutional language which asserts that '[a]ny prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used *without limitation* for purposes of impeachment or enhancement of sentence in any criminal proceeding. . . .' (Cal. Const., art. I, § 28, subd. (f), italics added.) He then points to the provisions of section 667, which by imposing a five-year enhancement for a crime—burglary—which usually has a base term of less than five years, necessarily contemplate an enhancement unlimited by the length of the base term. We find the meaning of the constitutional provision uncertain, but agree that section 667 was intended to impose an enhancement unlimited by the double base term rule.

"The enhanced term of five years imposed by section 667 is applicable upon a conviction for burglary of a residence if defendant was previously convicted of a serious felony. Such a burglary, as we have observed, may be either first or second degree. The former carries base terms of two, four or six years (§ 461, subd. 1); the latter carries terms of sixteen months, two years or three years (§ 461, subd. 2 and § 18). Thus, if the double base term limitation applied, it would prevent imposition of the full five-year enhancement except in cases in which the defendant was convicted of first degree burglary and received the aggravated term. We conclude that enhancements for serious felonies under section 667 were not intended to be subject to the double base term limitation of section 1170.1, subdivision (g). To carry out the intention of the enactment, we read section 1170.1, subdivision (g), as if it contained an exception for enhancements for serious felonies pursuant to section 667, comparable to the explicit exception for enhancements for violent felonies under section 667.5." (*People* v. *Jackson, supra,* 37 Cal.3d at pp. 837-838, fn. omitted.) The court went on to conclude that Proposition 8's failure to amend section 1170.1, subdivision (g), was a draftsman's oversight comparable to the failure to amend section 1170.1, subdivision (f)—requiring enhancements be pleaded and proven as provided by law—to include enhancements pursuant to section 667. (*Jackson, supra,* at pp. 835, 838, fns. 12 and 15.)

Thus, even though the language of section 1170.1, subdivision (g), arguably limited the use of section 667 priors, the California Supreme Court effectuated the intent of the framers of the legislation and ruled prior serious felonies under section 667 not to be limited by the twice-the-base-term rule of section 1170.1, subdivision (g). In the instant case, defendant seeks to narrow the application of section 667 to an even greater extent than the defendant in *Jackson*. However, unlike *Jackson,* defendant can point to no language in section 1170.1 which expressly limits imposition of enhancements coming under the clear language of section 667. Instead, in order to accept defendant's contention, this court would be required to engage in convoluted reasoning and render section 667, to a certain extent, superfluous, i.e., the enhancements could not be imposed except where consecutive sentences were not imposed.

It is noted that along with amending subdivision (a) of section 1170.1 to include section 667, the Legislature also amended subdivisions (f) and (g) of that section. The obvious and logical inference is that the statute was amended to correct the apparent oversight discussed in *Jackson*. Contrary to defendant's contention, the 1988 amendments to section 1170.1 do not indicate recognition on the part of the Legislature that section 667 enhancements previously could not be imposed as part of a consecutive sentence. In *People* v. *Eddahbi* (1988) 199 Cal.App.3d 1135 [245 Cal.Rptr. 330], where the court was confronted with a similar problem regarding section 1170.1, subdivisions (a), (b) and (g), the court stated: "Despite the absence of express exceptions to either the double the base term rule or the five year aggregate consecutive term limit, the clear intent of [§ 1170.1] subdivision (b) is to relate directly the length of the consecutive subordinate term a trial court may impose upon kidnappers of multiple victims to the number of such victims. We, therefore, hold sentences imposed pursuant to subdivision (b) of section 1170.1 to be impliedly excepted from the limitations found in both subdivisions (a) and (g).

"In holding subdivision (b) unfettered by the twice the base term limit, we note that despite the absence of any published opinion dealing with this apparent legislative oversight, section 1170.1, subdivision (g), has been amended, effective January 1, 1988, expressly to except consecutive terms of imprisonment imposed under subdivision (b) from its ambit. (Stats. 1987, ch. 1423, § 3.7, p. __.) *We regard this belated amendment as declaratory of existing law rather than an expansion of the exceptions to the double the base term rule.* We perceive the legislative intent was, has been and continues to be, that offenders who kidnap multiple victims on multiple occasions deserve multiple punishment without the benefit of the double the base term limitation. To hold otherwise would run afoul of the rule of statutory construction that each provision in a law is to be construed so as not to

render another 'useless or deprived of meaning.' [Citations.]" (*People* v. *Eddahbi, supra,* at p. 1142, italics added.)

Similarly here, since defendant's proposed interpretation would conflict with the "without limitation" language of California Constitution, article I, section 28, subdivision (f), as well as the apparent intent of the framers of section 667, we hold, as did the courts in *Jackson, supra, Eddahbi, supra,* and *People* v. *Carvajal* (1988) 199 Cal.App.3d 479, 484 [244 Cal.Rptr. 835], that the failure to amend section 1170.1, subdivision (a), concurrently with the enactment of section 667 was a draftsman's oversight.

### DISPOSITION

The judgment of convictions is affirmed. The sentence is vacated and the matter is remanded for resentencing after preparation and consideration of a new probation officer's report.

Martin, Acting P. J., and Hamlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 1, 1989.